CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
6/18/2020
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| ANTHONY SMITH, )<br>    *Plaintiff* ) | |
| ) | |
| v. ) | CASE NO. 6:20-cv-00016-NKM |
| ) | |
| CENTRA HEALTH, INC. ) | THIRD AMENDED COMPLAINT |
| ) | |
| and ) | JURY TRIAL DEMANDED |
| ) | |
| WESLEY THOMAS GILLESPIE ) | |
| ) | |
| and ) | |
| ) | |
| CHRISTOPHER PAUL JONES, ) | |
| ) | |
| and ) | |
| ) | |
| JOHN DOES 1-10, ) | |
|     *Defendants*. ) | |

**THIRD AMENDED COMPLAINT**

Plaintiff Anthony Smith ("SMITH"), by the undersigned attorney, makes the following averments:

**NATURE OF THE CASE**

1. This action arises from the unlawful assault, battery, false arrest of SMITH in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 by defendants Wesley Thomas Gillespie ("GILLESPIE"), Christopher Paul Jones ("JONES"), John Does 1-10 ("DOES") who used objectively unreasonable force against SMITH on February 24, 2018 at Lynchburg General Hospital and further alleges gross, willful and wanton negligence of the defendants.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of federal claims asserted in this action pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over the state claims asserted in this action pursuant to 28 U.S. Code § 1367.

4. Venue is proper in this district under 28 U.S.C. §1391(b), because each of the defendants is a resident of the Western District of Virginia and because all of the events or omissions giving rise to the claim occurred in the Western District of Virginia pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

5. Plaintiff Anthony Smith ("SMITH") was, on February 24, 2018, a patient at Lynchburg General Hospital and is a resident of Lynchburg, Virginia.

6. Defendant Centra Health, Inc. ("CENTRA") owns and operates Lynchburg General Hospital in the city of Lynchburg, Virginia.  CENTRA is a non-stock corporation with its headquarters and principal place of business located in Lynchburg.

7. Defendant Christopher Paul Jones ("JONES") was a security guard employed by Centra Health, Inc. on February 24, 2018.

8. Defendant Wesley Thomas Gillespie ("GILLESPIE") was a security guard employed by Centra Health, Inc. on February 24, 2018.

9. Defendants John Does 1-10 ("DOES") were employees of Centra Health, Inc. on

February 24, 2018. The names of these individuals are currently unknown to the plaintiff.

## FACTS COMMON TO ALL COUNTS

10. In late February, 2018, Plaintiff Anthony Smith ("SMITH") began suffering from extreme abdominal pain due to a severe hernia.

11. SMITH is a peaceful and respectable gentleman who had an unblemished 18 year record of employment as a supervisor at the Lynchburg Adult Detention Center.

12. SMITH reported to the Emergency Room of Lynchburg General Hospital several times on successive days before February 24, 2018, and each time he was sent home without a proper diagnosis of his condition and without any treatment of it. His condition worsened every day.

13. After repeated visits to the Emergency Room at Lynchburg General Hospital, SMITH was eventually diagnosed with a severe hernia that required emergency surgery.

14. SMITH was admitted to Lynchburg General Hospital where he was treated with emergency surgery to repair the hernia.

15. On February 24, 2018, during post-operative recovery from the emergency surgery, SMITH suffered morphine-induced delirium (morphine administered by staff at the hospital) and he became disoriented and delusional.

16. While in the the state of delusion and disorientation from morphine-induced delirium, SMITH wandered from his hospital bed and into other areas of the hospital. SMITH was completely disconnected from reality due to the effect of the morphine.

17. SMITH did not pose an immediate risk of harm to himself or others at any time relevant to this complaint.

18. Defendant JONES and some or all of defendants DOES unlawfully assaulted, battered and falsely imprisoned plaintiff SMITH while he was delusional and disoriented. One of the defendants deployed a Taser against the plaintiff, causing SMITH to fall to the floor and to incur severe physical and mental injuries. His sutures ruptured, as did his hernia.

19. SMITH required treatment and further surgery as a result of the injuries he suffered due the assault and battery by JONES and DOES. He will require more surgery in the future because of the injuries he sustained in the assault and battery by JONES and DOES.

20. SMITH suffers permanent and debilitating physical and mental injuries, including (i) loss of liberty, (ii) isolation, (iii) loss of income, (iv) depression, (v) embarrassment, (vi) humiliation, (vii) excruciating pain, (viii) contusions, (ix) rupture of his surgical wounds, (x) medical expenses and (xi) severe mental anguish as a result of the deployment of a Taser by JONES and DOES. He is permanently disfigured because of the deployment.

21. SMITH lost both his job and also substantial retirement benefits as result of the deployment of a Taser by JONES and DOES, because the injuries they inflicted upon him rendered him unable to work.

22. The use of the Taser against Smith was not reasonably likely to cure any safety risk. Indeed, it severely injured SMITH.

23. The CENTRA security guards had other means available to assist SMITH without deploying a Taser against him.

24. After being assaulted and battered by JONES and DOES, SMITH was detained and physically restrained.

25. While SMITH was detained and physically restrained, GILLESPIE came to his room and threatened and harassed SMITH, thereby causing SMITH severe emotional distress.

26. While SMITH, suffering from lingering morphine-induced delirium, was writhing in pain and handcuffed to a bed and only partially conscious, GILLESPIE threatened to take SMITH to jail and have him charged, thereby causing SMITH intolerable emotional distress.

27. JONES, GILLESPIE and DOES were acting within the scope of their employment by CENTRA. when they injured SMITH on February 24, 2018.

28. JONES, GILLESPIE and DOES were acting under the color of state law when they injured SMITH because they were acting in concert with and under the direction and supervision of at least one Special Conservator of the Peace who was appointed upon the petition of CENTRA by the Lynchburg Circuit Court.

29. On and before February 24, 2018, in addition to employing its own security guards, CENTRA had an agreement with the Lynchburg Police Department to staff Lynchburg General Hospital with uniformed LPD officers to provide security. CENTRA reimbursed the Lynchburg Police Department for the wages paid to these LPD officers, but the LPD officers were not under the command or control of CENTRA.

30. The LPD officers assigned to Lynchburg General Hospital by agreement were in uniform and under the color of state law.

31. LPD officers working off-duty at Lynchburg General Hospital are forbidden by the agreement between LPD and CENTRA to allow any conflict between their duties as law enforcement officers and CENTRA.

32. CENTRA maintained unconstitutional policies or customs with regard to use of force by its security officers that were followed by the other defendants when they injured plaintiff Anthony Smith on February 24, 2018.

33. By custom or policy, on and before February 24, 2018, CENTRA armed its security guards with Tasers and other weapons.

34. By custom or policy, on and before February 24, 2018, CENTRA unconstitutionally permitted its security guards to deploy Tasers against individuals who did not pose an immediate threat of harm to anyone.

35. Before February 24, 2018, Centra unconstitutionally permitted medical staff to authorize the use of Tasers by security guards prospectively against patients.

36. Before February 24, 2018, many patients at Centra facilities were subjected to the unconstitutional use of force by deployment of Tasers at the direction of medical personnel, when the patients did not pose an immediate risk of harm to anyone.

37. Before February 24, 2018, Centra routinely hired inexperienced and unqualified security guards and then ignored their written pleas for training. Indeed, of these pleas was met with the directive to "stop sending emails."

38. Before February 24, 2018, Centra maintained the policy of employing maintenance and cleaning personnel to assist security guards in using force against patients. None of these

employees were trained in the constitutional limits of use of force.

39. Before February 24, 2018, Centra maintained a policy of custom of failing to maintain and secure weapons, including Tasers, and of allowing incident information to be altered or destroyed.

40. On many occasions before February 24, 2018, untrained and unlicensed maintenance and cleaning personnel assisted security guards in incidents during which Tasers were unconstitutionally deployed against incapacitated or delirious patients who posed no risk of immediate harm to anyone.

41. "Taser" is the brand name of an electrically conducted weapon.

42. Tasers are dangerous weapons that are designed and intended to physically incapacitate a subject.  Tasers can cause excruciating pain and death.

43. When a Taser is deployed against a standing subject, it is almost certain that the subject will fall and it is extremely likely that the subject will be injured.

44. CENTRA unconstitutionally permitted its security guards to use objectively unreasonable force against patients on multiple occasions:

    - On January 11, 2016, CENTRA armed one of its security guards (GILLESPIE) with a pistol, which GILLESPIE used to shoot a psychiatric patient in the back.

    - On February 4, 2016, Centra permitted its armed officers to chase down a individual off hospital grounds and to deploy a Taser against that individual when the individual did not pose any risk or threat of harm to anyone.

- - On May 18, 2018, CENTRA security guards deployed a Taser against a young man in the Emergency Room at Lynchburg General Hospital when that young man did not pose a threat of immediate harm to anyone.

45. CENTRA has recently and repeatedly been found by the federal government to have violated patients rights by use of unlawful restraint. These violations are matters of public record.

46. CENTRA has failed to properly train its security guards in the constitutional limits of their authority. The officers lack training in dealing with psychotic or delusional patients and the need for this training, in the context of a hospital setting, is plainly obvious.

47. The need for any entity to train security guards in the constitutional limits of deadly weapons, including Tasers, is plainly obvious.

48. The defendants violated the plaintiff's liberty and due process rights under the Fourth and Fourteenth Amendments to the United States Constitution, thereby subjecting themselves to liability under 42 U.S.C. § 1983.

49. Plaintiff is entitled to recover his reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

### FIRST CAUSE OF ACTION
***MONELL* CLAIM AGAINST CENTRA HEALTH, INC. - UNCONSTITUTIONAL POLICES OR CUSTOMS THAT DIRECTLY CAUSED HARM TO PLAINTIFF SMITH**

50. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

51. CENTRA maintained unconstitutional policies that were clearly and deliberately indifferent to the rights of patients or others.

52. Indeed, Centra maintained its unconstitutional policy or custom of permitting its security guards to use Tasers and other weapons for mere apprehension or compliance, even after it was joined in litigation over the issue in 2016 in this Court.

53. In *Estate of Armstrong v. Village of Pinehurst*[1], the Fourth Circuit clearly prohibited the use of Tasers against subjects that do not pose an imminent threat of harm:

> A taser, like "a gun, a baton, . . . or other weapon," is expected to inflict pain or injury when deployed. It, therefore, may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser….
>
> ...Where, during the course of seizing an out-numbered mentally ill individual who is a danger only to himself, police officers choose to deploy a taser in the face of stationary and non-violent resistance to being handcuffed, those officers use unreasonably excessive force. While qualified immunity shields the officers in this case from liability, law enforcement officers should now be on notice that such taser use violates the Fourth Amendment.

54. In utter defiance of the Fourth Circuit, CENTRA continues to this day to permit its security guards, acting at the behest of, or in concert with, Special Conservators of the Peace who in turn act under the color of state law, to deploy Tasers against subjects who either pose no harm at all or who pose only harm to themselves and who face even greater harm from the use of a Taser. This allows CENTRA security guards to use objectively unreasonable and excessive force under the color or state law.

55. JONES and DOES were acting in accordance with CENTRA'S unconstitutional policy or

---

1   810 F.3d 892 (4th Cir. 2016)

custom when one of them deployed a Taser against SMITH.

56. The application of CENTRA'S unconstitutional policy or custom of permitting its security guards to use unreasonable and clearly excessive force was a direct and proximate cause of SMITH'S injuries.

<h2 style="text-align:center">SECOND CAUSE OF ACTION</h2>

<em>MONELL</em> CLAIM AGAINST DEFENDANT CENTRA HEALTH, INC. - DELIBERATELY INDIFFERENT FAILURE TO TRAIN ITS SECURITY GUARDS IN THE CONSTITUTIONAL LIMITS OF THEIR AUTHORITY<br/>
[42 U.S.C. § 1983]

57. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

58. On and before February 24, 2018, CENTRA routinely hired security guards who lacked any prior training or experience.

59. On and before February 24, 2018, CENTRA did not license its security guards with the Virginia Department of Criminal Justice Services.

60. On and before February 24, 2018, CENTRA trained its security guards with an online course in Basic Security Officer training provided by the International Association for Healthcare Security and Safety that did not describe or delineate the constitutional limits of the use of force.

61. On and before February 24, 2018, CENTRA provided woefully deficient in-house Taser training and certification to its newly hired security guards.  This training and certification did not address the constitutional limitations of the use of Tasers.  Indeed, new recruits were given a few minutes of instruction on the operation of the weapon,

subjected to a single Taser deployment on their toes and returned to duty.

62. On and before February 24, 2018, CENTRA security guards were never trained in the constitutional limits of the use of force.

63. Indeed, Centra was not just deliberately indifferent with regard to the obvious need to train its security guards in the constitutional limits of use of force (including Tasers), but deliberately ignored and refused direct requests from its officers for such training.

64. CENTRA'S failure to properly train its officers is acknowledged in CENTRA'S own pleadings.  Indeed, in its Brief in Support of its Motion to Dismiss (ECF 4), CENTRA offers the following alternative and thoroughly unconstitutional justifications for the deployment of a Taser against Smith by its security guards:

    - A security guard deployed the Taser to detain SMITH.

    - The guard deployed the Taser against SMITH to prevent SMITH from entering other areas of the hospital.

65. It is unconstitutional to detain anyone with a Taser.  A Taser is only to be used to prevent immediate harm and then only when it is reasonable to believe the Taser will prevent harm, instead of causing it, as it did here.

66. It is also unconstitutional to deploy a Taser against a trespasser merely to prevent him from trespassing.

67. Any reasonably trained security guard would know that it is objectively unreasonable to deploy a Taser against a standing, delirious post-operative patient and any properly trained security guard would also know that deploying a Taser against such a subject

would almost certainly cause serious harm to the subject.

68. The Fourth and Fourteenth Amendments to the United States Constitution provide clearly established protected rights to all persons, including, but not limited to:

   - Freedom from unreasonable seizure and excessive force.

   - Freedom from the deprivation of liberty and property without due process of law

69. The need to train officers in the constitutional limitations on the use of conducted electrical weapons and batons is so obvious that that CENTRA'S failure to do is properly characterized as "deliberate indifference" to constitutional rights.  See, e.g., *City of Canton, Ohio v. Harris,* 489 U.S. 378 (1989)

70. CENTRA'S failure to train its security guards was a direct and proximate cause of SMITH'S injuries.

**THIRD CAUSE OF ACTION**

**EXCESSIVE FORCE BY DEFENDANTS CHRISTOPHER PAUL JONES AND JOHN DOES 1-10 IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

**[42 U.S.C. § 1983]**

71. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

72. The Fourth and Fourteenth Amendments to the United States Constitution prohibit the application of unreasonable force against individuals who have been seized under the color of state law.

73. JONES and DOES, acting in concert with Lynchburg Police Department officers, CENTRA'S Special Conservators of the Peace and acting under color of state law,

applied objectively unreasonable and excessive force while unlawfully detaining and arresting SMITH on February 24, 2018. In analyzing the factors enunciated in *Graham v. Connor*[2], when JONES and DOES used force against SMITH, (i) SMITH had not committed any crime, nor was he suspected of having committed any crime, (ii) SMITH did not pose a danger to himself or others nor had he harmed himself or anyone else and nor had he threatened to harm himself or anyone else.

74. "[L]aw enforcement officers should now be on notice that such taser use violates the Fourth Amendment." *Estate of Armstrong v. Village of Pinehurst,, supra*

75. The use of objectively unreasonable and excessive force by JONES and DOES was a direct and proximate cause of SMITH'S injuries.

76. SMITH suffered serious, permanent and extensive injuries as a result of the excessive use of force by JONES and DOES on February 24, 2018, including (i) rupture of his hernia, (ii) contusions to his face, back, legs and arms, (iii) medical expenses, (iv) excruciating pain, (v) embarrassment, (vi) humiliation, (vii) extreme mental anguish, (viii) permanent disfiguration, (ix) loss of mobility and (x) loss of employment (including wages and benefits).

**FOURTH CAUSE OF ACTION**
**COMMON LAW ASSAULT AND BATTERY AGAINST DEFENDANTS CENTRA HEALTH, INC., CHRISTOPHER PAUL JONES AND JOHN DOES 1-10**
**[VIRGINIA COMMON LAW CLAIM]**

77. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

---

[2]   490 U.S. 386, 109 S. Ct. 1865; 104 L. Ed. 2d 443; 1989 U.S. LEXIS 2467; 57 U.S.L.W. 4513

78. JONES and DOES, without legal justification, intentionally placed SMITH in reasonable apprehension of imminent physical harm when, acting in concert, they threatened to use force against SMITH.

79. JONES and DOES intentionally touched SMITH, with the intent to cause harm or offense to SMITH on February 24, 2018 by acting in concert to deploy a Taser against him.

80. SMITH did not consent to being touched by JONES or DOES on February 24, 2018.

81. Neither JONES nor DOES were justified in touching SMITH on February 24, 2018.

82. CENTRA is vicariously liable for the actions of JONES and DOES because they were acting within the scope of their employment by CENTRA when they battered SMITH.

83. SMITH suffered serious, permanent and extensive injuries as a result of being battered by JONES and DOES on February 24, 2018, including (i) rupture of his hernia, (ii) contusions to his face, back, legs and arms, (iii) medical expenses, (iv) excruciating pain, (v) embarrassment, (vi) humiliation, (vii) extreme mental anguish, (viii) permanent disfiguration, (ix) loss of mobility and (x) loss of employment (including wages and benefits).

84. SMITH is entitled to recover damages, including compensatory and punitive damages, from CENTRA, JONES and DOES for the injuries he sustained as a result of battery on February 24, 2018.

**FIFTH CAUSE OF ACTION**
**FALSE IMPRISONMENT**
**[VIRGINIA COMMON LAW CLAIM]**

85. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

86. SMITH alleges common law false imprisonment by CENTRA, JONES, DOES and GILLESPIE

87. SMITH was detained and physically restrained by CENTRA and its employees on February 24, 2018 when there was no legal justification for doing so.

88. While handcuffed to his bed, SMITH was questioned by GILLESPIE who also threatened him with arrest and criminal prosecution without basis.

89. GILLESPIE unlawfully continued to restrain SMITH when SMITH was no longer delirious and when there was no legal basis for restraint.

90. SMITH suffered injuries as a result of being falsely imprisoned by CENTRA, JONES, DOES and GILLESPIE on February 24, 2018, including (i) loss of liberty, (ii) isolation, (iii) loss of income, (iv) depression, (v) embarrassment, (vi) humiliation and (vii) severe mental anguish.

## SIXTH CAUSE OF ACTION
### GROSS AND WILLFUL, WANTON AND RECKLESS NEGLIGENCE BY DEFENDANTS CENTRA HEALTH, INC., CHRISTOPER PAUL JONES AND JOHN DOES 1-10
### [VIRGINIA COMMON LAW CLAIM]

91. All previous paragraphs of this complaint are incorporated herein by reference and are re-alleged as if restated.

92. CENTRA had a duty to protect all of its patients, including SMITH, from harm.

93. It is entirely foreseeable that post-surgical patients may become delirious and leave their beds. Indeed, Lynchburg General Hospital employs bed alarms in its surgical recovery rooms precisely because of this risk.

94. CENTRA had a duty to protect delirious patients, including SMITH, by preventing them from leaving their beds and wandering elsewhere.

95. CENTRA had a duty to use safe means to restrain and protect delirious patients, including SMITH.

96. The deployment of a Taser against any delirious patient is not a safe means of restraining and protecting the patient. It is a dangerous and potentially lethal means of doing so.

97. Safe means and techniques exist to handle delirious patients like SMITH who pose no risk of harm without deploying Tasers against them. Some of these techniques include the use of distraction, de-escalation and the deployment of less injurious weapons (pepper spray or properly used batons).

98. CENTRA breached its duty of care to SMITH by allowing its security guards to act in concert to deploy a Taser against SMITH.

99. Neither JONES nor DOES are "health care providers" as contemplated by Virginia law.

100. The deployment of a Taser by a hospital security guard is not a "professional service" as contemplated by Virginia law.

101. Neither JONES nor DOES were instructed to deploy the Taser against SMITH by any health care professional.

102. JONES and DOES had a duty to SMITH to protect him from harm on February 24, 2018.

103. JONES and DOES breached their duty of care to SMITH when they acted in concert to deploy a Taser against him on February 24, 2018.

104. JONES and DOES acted with gross negligence when they deployed a Taser against SMITH in utter disregard of his rights or welfare.

105. JONES and DOES acted with willful, wanton and reckless negligence when they deployed a Taser against SMITH instead of protecting him.

106. The negligence of CENTRA, JONES and DOES was a direct and proximate cause of SMITH'S injuries and damages.

107. In addition to compensatory damages, SMITH is entitled to recover punitive damages from CENTRA, JONES and DOES.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff ANTHONY SMITH, prays that this Court enter judgment in his favor and against the defendants on each of the above causes of action, and further prays for:

A) An award of his actual damages as appropriate to the proof at trial.

B) Punitive damages as appropriate to the proof at trial.

C) Recovery from the defendant of the reasonable attorney fees and costs incurred in bringing this action.

D) Such additional and other relief as the Court deems appropriate, including, but not limited

to, injunctive, prospective, declaratory or other equitable relief.

**A JURY TRIAL IS DEMANDED**

Respectfully submitted,

**ANTHONY SMITH
By Counsel**

**By:** **/s/ M. Paul Valois**
**M. Paul Valois (VSB No. 72326)
Counsel for Plaintiff
JAMES RIVER LEGAL ASSOCIATES
7601 Timberlake Road
Lynchburg, Virginia 24502
Telephone: (434) 845-4529
Facsimile: (434) 845-8536
[Email: mvalois@vbclegal.com]**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of June, 2020, I electronically filed the foregoing Second Amended Complaint with the Clerk of this Court using the CM/ECF system, which will automatically send notice of this filing to:

| | |
|---|---|
| Elizabeth Guilbert Perrow | Eric P. Burns |
| Daniel T. Sarrell | WILSON ELSER MOSKOWITZ |
| Joshua F. P. Long | EDELMAN & DICKER, LLP |
| Joshua R. Treece | 8444 Westpark Drive, Suite 510 |
| J. Walton Milam | McLean, Virginia 22102 |
| WOODS ROGERS PLC | P:  (703) 245-9300 |
| P.O. Box 14125 | F:  (703) 245-9301 |
| Roanoke, Virginia 24038 | eric.burns@wilsonelser.com |
| P:  (540) 983-7600 | |
| F:  (540) 983-7711 | Counsel for Defendants Wesley |
| eperrow@woodsrogers.com | Gillespie and Christopher Jones |
| dsarrell@woodsrogers.com | |
| jlong@woodsrogers.com | |
| jtreece@woodsrogers.com | |
| wmilam@woodsrogers.com | |

Counsel for Defendant Centra Health, Inc.

/s/   M. Paul Valois