## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| ANTHONY SMITH,<br><br>          Plaintiff,<br><br>v.<br><br>CENTRA HEALTH, INC. et al.,<br><br>          Defendant. | Case No.: 6:20-cv-00016-NKM |

## MEMORANDUM IN SUPPORT OF DEFENDANTS WESLEY THOMAS GILLESPIE AND CHRISTOPHER PAUL JONES'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT

## INTRODUCTION

Plaintiff's Third Amended Complaint establishes that he was wandering Lynchburg General Hospital delirious, in a delusional and disoriented state, completely disconnected from reality, when Defendant Christopher Paul Jones was called to the scene. Plaintiff's own pleaded state of mind, and the fact that he was wandering the halls of a hospital in such state, render the alleged actions of hospital security guards, Mr. Jones and Wesley Thomas Gillespie objectively reasonable and justified, and not offensive to the Constitution. Accordingly, Plaintiff has failed to state a claim against them and the Third Amended Complaint should be dismissed with prejudice.

## FACTS

### I.      General Background to Plaintiff's Complaint

As alleged in the Third Amended Complaint, Plaintiff Anthony Smith was admitted to Lynchburg General Hospital on February 24, 2018 after having received emergency surgery to

repair a hernia. *Plaintiff's Third Amended Complaint*, ¶ 14. Following that surgery, Plaintiff was in a state of "delirium" and became "disoriented and delusional." *Id*. ¶¶ 15-16. While in this state, disconnected from reality, Plaintiff left his hospital bed to trespass into unauthorized areas of the hospital. *Id*. ¶ 16, 66. Somebody called hospital security and Mr. Jones and unnamed other security guards, identified as John Does, approached Mr. Smith, determined that he needed to be restrained, and proceeded to restrain him, a process which included use of a TASER on Plaintiff by someone unidentified in the Third Amended Complaint. *Id*. ¶18. Plaintiff alleges that following his initial restraint, Defendant Gillespie did not release him from restraint as he was coming to, still in pain, and that Mr. Gillespie threatened to take Plaintiff to jail and potentially charge him with a crime. *Id*. ¶¶ 26, 88-89.

Plaintiff sues Mr. Jones under 42 U.S.C. § 1983 ("Section 1983") for alleged excessive force in violation of the Fourth and Fourteenth Amendments (Count III) as well as common law claims for Assault and Battery (Count IV), False Imprisonment (Count V), and Gross and Willful, Wanton and Reckless Negligence (Count VI). Against Defendant Gillespie, Plaintiff alleges common law False Imprisonment (Count V).

## II.    Specific Allegations Against Christopher Jones

Mr. Jones was a "security guard employed by Centra Health, Inc. on February 24, 2018" and was acting "within the scope of [his] employment by Centra" when the alleged incident occurred. *Plaintiff's Third Amended Complaint*, ¶ 7, 27. Plaintiff alleges that Mr. Jones was "acting under the color of state law" when the incident occurred because he was "acting in concert with Lynchburg Police Department officers," and "Centra's Special Conservators of the Peace" when he detained and arrested the Plaintiff." *Id*. ¶ 73.

2

Plaintiff contends that Mr. Jones used unreasonable and excessive force against Plaintiff when he, along with other unnamed security guards sued as John Does, restrained and arrested Plaintiff. *Id*. ¶ 73. Plaintiff asserts that the use of a TASER on Plaintiff was unreasonable and excessive, although he does not specify *which* defendant deployed the TASER. *Id*. ¶ 18. Plaintiff further alleges that Mr. Jones acted without legal justification when he, along with the other unnamed security guards, placed Plaintiff in reasonable apprehension of immediate bodily harm when threatening to use force against him, and that they intentionally touched Plaintiff without his consent. *Id*. ¶ ¶ 78-81.

Moreover, Plaintiff alleges that Mr. Jones had a duty to protect Smith from harm, and that he breached his duty of care when he acted in concert with the unnamed guards to deploy a TASER against Plaintiff. *Id*. ¶ ¶ 102-03. Plaintiff claims that the use of a TASER against Plaintiff was gross, willful, wanton, and reckless negligence, in "utter disregard of [Plaintiff's] rights or welfare. *Id*. ¶ ¶ 104-05.

## III.    Specific Allegations Against Wesley Gillespie

Plaintiff alleges that Defendant Gillespie "was a security guard employed by Centra Health, Inc. on February 24, 2018" and was acting "within the scope of [his] employment by Centra" when the alleged incident occurred. *Plaintiff's Third Amended Complaint*, ¶¶8, 27. Plaintiff contends that Defendant Gillespie was "acting under the color of state law" when the incident occurred because he is a "Special Conservator of the Peace who was appointed upon the petition of Centra by the Lynchburg Circuit Court." *Id*. ¶ 28. Plaintiff claims that while he was detained and handcuffed to a bed, Defendant Gillespie entered his room, questioned him, and threatened him with criminal prosecution.  *Id*. ¶ ¶ 25-26, 88-89. Moreover, Plaintiff claims that

Defendant Gillespie continued to detain and restrain Plaintiff when there was "no basis for doing so." *Id*. ¶ 89.

Plaintiff has not asserted any other factual allegations with respect to Defendant Gillespie.

## <u>ARGUMENT</u>

### I.      **Legal Standard for Motion to Dismiss**

The standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is well-known. The Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

Moreover, "[a] plaintiff does not satisfy Rule 8 when the complaint 'lump[s] all the defendants together and fail[s] to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong.'" *Classen Immunotherapies, Inc. v. Biogen Idec*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (citing *Appalachian Enterprises, Inc. v. Epayment Solutions Ltd*., 2004 U.S. Dist. LEXIS 24657, *21 (S.D.N.Y. 2004)); *Marcantonio v. Dudzinski*, 155 F. Supp. 3d 619, 626 (W.D. Va. 2015) ("In the Fourth Circuit and elsewhere, courts have interpreted *Twombly* and *Iqbal* to mean that generic or general allegations about the conduct of 'defendants,' without more, fail to state a claim."); *Raub v. Bowen*, 960 F. Supp. 2d 602, 616 (E.D. Va. 2013) (concluding that "vagaries" in "ambiguous" false imprisonment count asserted against "one or more Defendants" justified dismissal).

## II.     Legal Standard for 42 U.S.C. § 1983

Section 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

However, Section 1983 "'is not itself a source of substantive rights,' but [instead] provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under Section 1983, a plaintiff must properly allege (1) that a legal right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S. 823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997). Section 1983 requires a showing of personal fault based upon a defendant's personal conduct. *See Fisher v. Washington Metropolitan Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991) (finding that § 1983 requires a showing of personal fault); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)  (holding that § 1983 liability cannot be premised on the doctrine of *respondeat superior*). Importantly, the language of the statute serves to "impose[] liability on a government that, *under color of some*

*official policy*, 'causes' an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 692 (emphasis added). An actor cannot be held liable solely on the basis of a failure to adequately control or supervise any conduct that directly caused the specific deprivation charged. *Fisher, supra*, 690 F.2d at 1142-1143.

## III.   Argument for Mr. Jones

The facts alleged in the Third Amended Complaint fail to demonstrate that Mr. Jones violated Plaintiff's Constitutional rights through use of excessive force. Under applicable law, use of force does not violate the Constitution if the force is "objectively reasonable" under the circumstances. In this case, Plaintiff admits that he was trespassing in a state of delirium at a time when he was "disconnected from reality." Based on the alleged facts, the only reasonable inference is that hospital personnel, including Mr. Jones, perceived Plaintiff as a danger to himself and others. Similarly, Plaintiff's disconnection from reality reasonably necessitated use of force to subdue Plaintiff and protect himself and others in the hospital. As a result, Mr. Jones's actions were legally justified and did not violate the Constitution.

Even if the Court determined that it could not decide on the face of the Third Amended Complaint that Mr. Jones's use of force was reasonable, he would nonetheless be entitled to qualified immunity because his actions were not knowingly unconstitutional, as it was not clearly established that the use of a TASER in the situation described in the Third Amended Complaint would be excessive and violate Plaintiff's Constitutional rights.

For the very same reasons, Plaintiff fails to state a claim for either assault or battery in Count IV. Mr. Jones's response was reasonable and justified under the circumstances, which is clear on the face of the Third Amended Complaint and, therefore, cannot constitute assault or battery under Virginia common law.

Plaintiff fails to state a claim for common law false imprisonment against Mr. Jones as well. Count V fails against Mr. Jones because the apprehension of Plaintiff was reasonable under the circumstances, and because it made sense to restrain him under the circumstances, it made sense to keep him restrained until it could be determined that he was no longer a safety risk to himself or others.

Finally, under a somewhat different though clearly related analysis, Plaintiff's Count VI fails to state a claim for gross, willful and wanton or reckless negligence because the facts as alleged simply do not match up with cases where such negligence has been pleaded and/or proven. They do not rise to the level of severity necessary to state such a claim as a matter of law.

For these reasons, the Third Amended Complaint against Mr. Jones should be dismissed.

## A.   Defendant Christopher Jones Should Be Dismissed from this Lawsuit Because Plaintiff Has Not Stated a Claim Under § 1983

Plaintiff alleges in Count III that Mr. Jones used Excessive Force in Violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983. Plaintiff, however, has failed to adequately plead such a claim against Mr. Jones for three reasons. First, Plaintiff has not alleged facts showing that Mr. Jones violated Plaintiff's Fourth Amendment rights. Second, Plaintiff's Third Amended Complaint does not show that Mr. Jones violated Plaintiff's due process rights. Third, in the alternative, qualified immunity shields Mr. Jones this lawsuit.

### 1.   *Mr. Jones Did Not Violate the Fourth Amendment*

Based solely on consideration of the allegations in the Third Amended Complaint, Mr. Jones did not unlawfully seize Plaintiff under the Fourth Amendment because "[a]n arrest based on probable cause does not violate the [F]ourth [A]mendment…." *Mensh v. Dyer*, 956 F.2d 36, 39 (4th Cir. 1991) (citations omitted). When presented with probable cause to do so, as Mr. Jones

was here, he was entitled to use the amount of force necessary to take an individual into custody. *Id.* at 40. Where, like here, no issue of fact is presented, the "probable cause determination made under the Fourth Amendment presents a question of law." *U.S. v. Miller*, 925 F.2d 695, 698 (4th Cir. 1991). Probable cause justifies arrests when "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Moreover, an officer "may arrest an offender even for a 'very minor criminal offense' so long as the seizure is supported by probable cause." *Harrison v. Deane*, 426 Fed. Appx. 175, 181 (4th Cir. 2011) (citing *Figg v. Schroeder*, 312 F.3d 625, 636 (4th Cir. 2002)).

Here, Plaintiff concedes that he had left his designated hospital bed and was trespassing through unauthorized areas of the hospital in a delusional and disoriented state, and was entirely detached from reality. *Plaintiff's Third Amended Complaint*, ¶ ¶ 15-16. It is reasonably inferred that in this state, he was causing sufficient problems to require that hospital security was called. Faced with Plaintiff's trespassing, delusional and disoriented behavior indicating that he had detached from reality, Mr. Jones reasonably suspected and concluded that he had to detain and arrest Plaintiff because he was a danger to himself and others in the hospital. As Plaintiff's Third Amended Complaint pleads, Plaintiff was not in a state of mind where Mr. Jones could accompany him back to his room and reason with him. *Id*.

Thus, the alleged "seizure" of Plaintiff was lawful because there was probable cause to make a seizure. *Mensh*, 956 F.2d at 39 ("An arrest based on probable cause does not violate the [F]ourth [A]mendment…."). Because the Fourth Amendment allows seizures to occur when

there is probable cause, for purposes of Section 1983, Mr. Jones and any other guards involved in seizing Plaintiff acted in a lawful manner, not offensive to the Fourth Amendment.

2.    *Mr. Jones Did Not Use Excessive Force*

Plaintiff alleges that Mr. Jones, along with unidentified John Does, applied objectively unreasonable and excessive force because a TASER was used while arresting him. *Plaintiff's Third Amended Complaint*, ¶ 73. Plaintiff does not allege *which* Defendant deployed the TASER. *Plaintiff's Third Amended Complaint*, ¶ ¶18, 74.

General or generic allegations about the conduct of 'defendants,' without more, fail to state a claim. *Marcantonio*, 155 F. Supp. 3d at 626. Therefore, Plaintiff's blanket, conclusory statements involving the alleged actions of Mr. Jones and the John Does, without specifying any alleged actions that the individual defendants took, fail to state a claim for which relief can be granted.

Even assuming the allegations were that it was Mr. Jones who used the TASER, any such use was objectively reasonable under the circumstances, and no Constitutional violation occurred. Plaintiff has therefore failed to state a claim regarding excessive force.

When the facts are undisputed, as they are for the purposes of a motion to dismiss, the Court may consider an excessive force claim as a matter of law. *See, e.g., Milstead v. Kibler,* 1999 U.S. Dist. LEXIS 8380, *9 (W.D. Va. Apr. 19, 1999) ("Motions to dismiss claims of excessive use of force have been granted . . . where the use of force was clearly warranted."); *Bakha Yawuti El v. Wean*, 2017 U.S. Dist. LEXIS 144598, *8 (D.S.C. Sep. 7, 2017) (granting a motion to dismiss on an excessive force claim); *Blakely v. Greene*, 24 F.2d 676, 681 (4th Cir. 1928) ("Where the facts are undisputed it is a question of law, and should be determined by the court[.]").

"The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. at 397. The Court should consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Further, even in the more extreme cases of lethal shootings, courts have repeatedly held that they "cannot second guess the split-second judgments of a police officer to use deadly force in a context of rapidly evolving circumstances, when inaction could threaten the safety of the officers or others[.]" *Milstead v. Kibler,* 243 F.3d 157, 165 (4th Cir. 2001); *Willis v. Oakes*, 493 F. Supp. 2d 776, 783 (W.D. Va. 2007) (The Court "must view the reasonableness of [a Defendant's] actions from the perspective of a reasonable officer acting in the chaotic situation and not second-guess whether his decision to shoot [plaintiff] was actually more dangerous.") (citations omitted).

Additionally, because many of the situations officers face in the course of their duties are ambiguous, the court must allow for reasonable mistakes. *Mazur v. Maryland*, 442 F.3d 217, 225 (4th Cir. 2006); *Schultz v. Braga*, 455 F.3d 470, 478 (4th Cir. 2006); *Creech v. Eckerd Corp.*, 56 Va. Cir. 407, 409 (Va. Cir. Ct. 2001) ("[o]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution.").

Indeed, even under Plaintiff's own allegations, the collective circumstances demonstrate that Mr. Jones's actions were objectively reasonable as a matter of law. Plaintiff concedes that at

all relevant times he suffered from delirium and delusions, and had completely disconnected from reality. *Plaintiff's Third Amended Complaint*, ¶¶ 15-16. While in this concerning mental state, he was trespassing into other areas of the hospital without authorization. *Id*. at ¶¶16, 66. All of these facts were objectively apparent, such that Mr. Jones and other security personnel were allegedly called on to deal with Plaintiff. Any reasonable person in Mr. Jones's position, with the duty to protect the hospital and all of its patients, including Plaintiff, would fairly conclude that Plaintiff needed to be seized.

Indeed, it is objectively reasonable that Mr. Jones concluded that if Plaintiff were left to traverse the hospital in such a mental state, with wide-spread access to dangerous medical instruments, equipment, and devices, he may cause harm to himself or other individuals. There can be little doubt that Plaintiff posed a serious threat to other hospital patients and medical staff. Thus, there was sufficient probable cause to believe that Plaintiff was trespassing into unauthorized areas of the hospital and that he posed a threat of serious physical harm to himself and to other patients and staff in the hospital. As a result, Mr. Jones was legally justified in arresting Plaintiff, and because, as Plaintiff acknowledges, he was entirely delusional at the time, Mr. Jones was justified in using force to restrain Plaintiff.

Given Plaintiff's delusional state, and the fact that Plaintiff's behavior was such that it necessitated calling hospital security, it is not reasonable to conclude there was a feasible way for Mr. Jones to escort Plaintiff back into his room and reason with him. That is not why you call a security guard. Rather, under these objective circumstances as set forth in the Third Amended Complaint, it was reasonable for Mr. Jones to use force to restrain Plaintiff, and no Constitutional violation occurred.

11

Plaintiff asserts in his Third Amended Complaint that it was the use of a TASER that made the force unreasonable, though it is hard to take this allegation seriously when paired with the allegations that Centra trained Mr. Jones (or failed to properly train Mr. Jones) with respect to the use of a TASER. *Plaintiff's Third Amended Complaint*, ¶¶ 74, 33-46. Taken at face value, based solely on the allegations in the Third Amended Complaint, Mr. Jones did nothing more or less than what he was trained to do. Nonetheless, and as discussed below with respect to qualified immunity, there was nothing inherently unreasonable or unconstitutional about the use of a TASER in these circumstances.

For all of the above reasons, Plaintiff's excessive force claim (Count III) should be dismissed.

### 3.   *Alternatively, Mr. Jones Is Entitled to Qualified Immunity*

Even if the Court determines a Constitutional violation has been adequately alleged, Mr. Jones is entitled to qualified immunity.  Qualified immunity is a shield which protects the government's ability to perform its "traditional functions" by "helping to avoid 'unwarranted timidity' in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing the harmful distractions from carrying out the work of government that can often accompany damages suits." *Filarsky v. Delia*, 132 S. Ct. 1657, 1665 (2012). Qualified immunity protects state actors (or alleged state actors) from liability for civil damages unless the plaintiff can show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). A right is clearly established when existing precedent has placed the right's existence "beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). However, Plaintiff has not shown "beyond debate" that Mr. Jones violated any

12

statutory or constitutional right of Plaintiff when he perceived Plaintiff as a threat to himself

and/or others, and, pursuant to his duties as a security guard, sought to restrain him.

Further, qualified immunity does not only apply to government actors, but can also apply

to private individuals. "In *Filarsky*, the [United States Supreme] Court considered 'whether an

individual hired by the government to do its work,' specifically a private attorney retained to

assist a municipality with an official investigation, '[wa]s prohibited from seeking such

immunity, solely because he work[ed] for the government on something other than a permanent

or full-time basis.'" *Meadows v. Rockford Hous. Auth.*, 861 F.3d 672, 676-77 (7th Cir. 2017).

"The Court held that 'immunity under § 1983 should not vary depending on whether an

individual working for the government does so as a full-time employee, or on some other basis."

*Id.* at 677. "In doing so, it further explained how the purposes of immunity for government

officials, discussed in *Richardson*, can apply with equal force to individuals in the private sector

who take on government functions[.]" *Id.* The Court reasoned in *Filarsky*,

> Sometimes, as in this case, private individuals will work in close coordination with public
> employees, and face threatened legal action for the same conduct. Because government
> employees will often be protected from suit by some form of immunity, those working
> alongside them could be left holding the bag--facing full liability for actions taken in
> conjunction with government employees who enjoy immunity for the same activity.
> Under such circumstances, any private individual with a choice might think twice before
> accepting a government assignment.
> …
> The public interest in ensuring performance of government duties free from the
> distractions that can accompany even routine lawsuits is also implicated when individuals
> other than permanent government employees discharge these duties. Not only will such
> individuals' performance of any ongoing government responsibilities suffer from the
> distraction of lawsuits, but such distractions will also often affect any public employees
> with whom they work by embroiling those employees in litigation. ... Allowing suit under
> § 1983 against private individuals assisting the government will substantially undermine
> an important reason immunity is accorded public employees in the first place.

*Filarsky*, 566 132 S. Ct. at 391 (internal citations omitted).

Conversely, in *Richardson*, the Supreme Court ruled that privately employed prison guards were not subject to qualified immunity in a narrow circumstance where the guards worked for a "large, multistate private prison management firm," which was "systematically organized to perform a major administrative task for profit," (i.e. managing an institution) and when the officers performed tasks "independently, with relatively less ongoing direct state supervision." *Richardson v. McKnight*, 521 U.S. 399, 409 (1997). Further, *Richardson* "d[id] not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential government activity, *or acting under close official supervision*." *Meadows*, 861 F.3d at 676. Here, Plaintiff does not and cannot allege that Jones worked for a "large, multistate private prison management firm." *Richardson*, 521 U.S. at 409. Additionally, Plaintiff has not alleged that there are any security contracts that expire or that Defendants performed their tasks without supervision. *Id.*

In this case, assuming Mr. Jones was a government agent for purposes of this motion, then he is undoubtedly entitled to qualified immunity. Plaintiff has not shown that Mr. Jones's actions in restraining Plaintiff while he was trespassing through the hospital in a state of delirium violated any "clearly established" right of Plaintiff "beyond debate." Plaintiff tries to head this argument off by reference to *Estate of Armstrong v. Village of Pinehurst*, which established that use of TASERS in drive stun mode is "proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the tasers." 810 F.3d 892, 903 (4th Cir. 2016). But the TASER use at issue in *Village of Pinehurst*, was specific to use of the TASER in drive stun mode, which the court found was "intended to be used for pain compliance rather than incapacitation." *Id*. at 897 n.3, 902. Here, Plaintiff has not and cannot allege discharge of the TASER in drive stun mode, so his

reference to *Village of Pinehurst* in his Third Amended Complaint lacks relevance to the qualified immunity or reasonable use of force analysis in this matter.

There is nothing in the allegations in the Third Amended Complaint that demonstrates that Mr. Jones acted unreasonably, or in any event, acted in a way that violated a clearly established Constitutional right of the Plaintiff. Accordingly, Plaintiff's Count III should be dismissed against Mr. Jones.

### B.    Mr. Jones Did Not Commit an Assault or Battery

Plaintiff has also failed to state a claim for assault or battery. To state a claim for assault, a plaintiff must plead facts that show a defendant committed a threatening act intended to put an individual in reasonable fear of imminent physical injury. *See Koffman v. Garnett*, 265 Va. 12, 16 (Va. 2003) ("[A]ssault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery"). Additionally, to state a claim for battery, a plaintiff must show that: (1) the defendant intentionally touched the plaintiff, (2) the touching was unwanted; and (3) the touching was without justification, excuse, or the plaintiff's consent. 1 Virginia Model Jury Instructions - Civil Instruction No. 36.070 (2019); *Koffman*, 265 Va. at 16 ("Battery is an unwanted touching that is neither consented to, excused, nor justified.").

However, "[a] legal justification for the act being complained of will defeat an assault or battery claim." *Unus v. Kane*, 565 F.3d 103, 117 (4th Cir. 2009) (citing *Koffman*, 265 Va. at 16). "Importantly, Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties." *Kane*, 565 F.3d at 117 (citing *Pike v. Eubank*, 197 Va. 692 (Va. 1956)). A Virginia Special Conservator of the Peace has legal authority to make an arrest and has legal authority to carry a weapon. *See* Va. Code 19 § 19.2-13(A) and (G).  Furthermore,

"[t]he Supreme Court of Virginia has concluded that an officer's entitlement to qualified immunity for a particular arrest vitiates liability for battery, assault, and false assault and false imprisonment claims based on that arrest". *McPhearson v. Anderson*, 874 F. Supp. 2d 573, 583 (E.D. of Va. 2012) (citations omitted).

Here, Plaintiff has failed to state his claims for assault and battery because Mr. Jones's actions were legally justified for the same reasons discussed in **Section III.A** above. Consequently, because Mr. Jones's use of force to restrain Plaintiff was legally justified while Plaintiff was trespassing around the hospital in a state of detachment from reality and delirium, Plaintiff has not stated actionable claims for assault or battery. These claims should therefore be dismissed.

### C.    Jones Did Not Falsely Imprison Plaintiff

Plaintiff's claim of false imprisonment against Mr. Jones also fails to state a claim upon which relief can be granted. To state a common law claim for false imprisonment, a plaintiff must show "the direct restraint by one person of the physical liberty of another without adequate legal justification." *McPhearson*, 874 F. Supp. 2d at 582 (citing *W.T. Grant Co. v. Owens*, 149 Va. 906, 921 (Va. 1928)). When, as is the case here, "the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." *Lewis v. Kei*, 281 Va. 715, 724 (Va. 2011). Furthermore, the Fourth Circuit has held that, in Virginia, an officer cannot be subjected to civil liability for false imprisonment "when the officer acted in good faith and with probable cause." *Harrison*, 426 F. Appx at 181. Moreover, in this jurisdiction, "a favorable ruling for the defendant on an excessive force claim brought under § 1983 requires dismissal of the state law claims as well." *Russell ex rel. Russell v. Wright*, 916 F. Supp. 2d 629, 645 (W.D. Va. 2013).

Here, Mr. Jones had more than adequate legal justification for restraining and arresting Plaintiff. At the time of the incident, Plaintiff had wandered from his hospital bed in a state of delirium and was trespassing into other areas of the hospital, acting in such a way that called for security personnel to come to the scene. *Plaintiff's Third Amended Complaint*, ¶¶ 15-16, 66. As Plaintiff's Third Amended Complaint admits, Plaintiff was not in a state of mind where Mr. Jones could simply escort him back to his room and reason with him.  *Id.* ¶¶ 15-16. Mr. Jones was forced to restrain Plaintiff at the very least until it was evident that Plaintiff's delirium had passed, *and* until it could be determined he no longer presented a danger to himself or others. Therefore, Mr. Jones had probable cause to restrain Plaintiff and prevent him from further trespassing or harming himself or others.

E.    *Jones Did Not Act With Gross or Willful, Wanton, and Reckless Negligence*

Plaintiff failed to state a claim for gross or willful, wanton, and reckless negligence against Mr. Jones. Under Virginia law, "[g]ross negligence is that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another.*" Big Stone Gap v. Johnson*, 184 Va. 375, 379 (Va. 1945) (internal citations omitted). "It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the *absence of slight diligence*, or the *want of even scant care*." *Gandy v. Robey*, 520 Fed. Appx. 134, 143 (4th Cir. 2013) (citing *Chapman v. City of Va. Beach*, 252 Va. 186 (Va. 1996) (holding that a Sergeant's decision to "employ a quick, dynamic entry that he believed would permit the officers to subdue" the Decedent with the "non-lethal force" of a Taser was reasonable under the circumstances). The bar for a gross-negligence claim is high; as the Supreme Court of Virginia made clear, "there is not gross negligence as a matter of law where there is even the slightest bit of care *regardless of how insufficient or ineffective* it may have been." *Elliott v. Carter*, 292 Va.

17

618, 621 (Va. 2016) (emphasis added). Moreover, gross negligence requires a showing that a defendant's actions or inactions would "shock fair-minded persons." *Hamilton v. Boddie-Noell Enters., Inc.*, 88 F. Supp. 3d 588, 592 (W.D. Va. 2015).

Additionally, "[w]illful or wanton negligence involves a greater degree of negligence than gross negligence, particularly in the sense that in the former an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission." *Tubman v. Commonwealth*, 3 Va. App. 267, 271 (Va. 1986) (citations omitted). "Willful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Id*.

In holding that a police officer did not act in a grossly negligent manner when the officer used deadly force to shoot the appellant, who was running towards him, the Fourth Circuit stated:

> Karnes's conduct did not amount to complete neglect of McLenagan's safety; he was simply faced with an impossible choice that had to be made in the flickering of an instant. Had Karnes chosen not to shoot and McLenagan indeed been armed, resulting in injury to another, we do not doubt that we would today be deciding whether Karnes's decision in that case constituted 'complete neglect of the safety of another.'

*McLenagan v. Karnes*, 27 F.3d 1002, 1009 (4th Cir. 1994); *see also Simpson v. Virginia*, 2016 U.S. Dist. LEXIS 95579, *35, 2016 WL 3923887 ("If Defendants had let the mentally ill Decedent walk out with his shotgun . . . and he had shot or otherwise injured a passerby, the Court 'do[es] not doubt that [it] would today be deciding whether [Defendants'] decision in that case constituted 'complete neglect of the safety of another.'") (citing *McLenagan*, 27 F.3d at 1009 (4th Cir. 1994).

Furthermore, the Western District of Virginia recognized the type of egregious actions that constitute gross negligence, and granted summary judgment on gross negligence claims stemming from use of a TASER by a police officer, reasoning:

> Wright's conduct did not amount to a complete disregard of Russell's safety. Wright was charged with making a difficult decision in a rapidly evolving situation. ACSO's use of force policy authorizes taser use against subjects who are resisting arrest, and targeting Russell's chest was in accordance with the training Wright received on how to use the device. Additionally, Russell was given numerous chances to comply with the officer's commands before any force was employed. As a result, Wright's conduct simply cannot be said to lack the 'slight diligence' required to defeat a claim of gross negligence.

*Russell ex rel.*, 916 F. Supp. 2d at 644.

Here, Plaintiff's claims of gross and willful, wanton, and reckless negligence fail because he cannot show that Mr. Jones acted in the absence of due diligence or care. Mr. Jones's actions in arresting Plaintiff certainly cannot be said to "shock fair-minded persons;" as previously detailed, Mr. Jones had sufficient legal justification for using the force necessary, including the use of a TASER, to restrain and arrest a delirious and mentally unsound Plaintiff while he was trespassing throughout unauthorized areas of the hospital, a danger to himself and others. Had Mr. Jones left Plaintiff to traverse the hospital in such a mental state, with wide-spread access to dangerous medical equipment, instruments, and devices, Mr. Jones very well may have been liable for the "complete neglect of the safety" of the other patients and staff at the hospital. Likewise, as Plaintiff's Third Amended Complaint pleads, Plaintiff was not in a state of mind where Mr. Jones could accompany him back to his room and reason with him. *Plaintiff's Third Amended Complaint*, ¶¶ 15-16. As such, Mr. Jones had to make a quick decision based on his observations and concerns over the rapidly unfolding situation.

Furthermore, while Plaintiff alleges Mr. Jones and Does acted negligently in deploying a TASER against him, Plaintiff does not specify *which* defendant deployed the TASER. *Id.*, ¶¶ 18,

103-05. Nor does the allegation of use of a TASER alone satisfy the pleading requirements for a claim of gross negligence or willful, wanton, or reckless negligence. The facts here, as discussed above, demonstrate that there was nothing grossly negligent, reckless, or willful and wanton about Mr. Jones's actions. Faced with exigencies of the circumstances and a difficult decision, he made a reasonable and legally justified decision to restrain Plaintiff, and, even if it is assumed that it was Mr. Jones that deployed the TASER, that decision too was reasonable and legally justified. Under no scenario do the allegations against Mr. Jones constitute gross negligence, willful or wanton conduct or recklessness with respect to his interaction with Plaintiff, and Count VI should be dismissed.

**IV. Defendant Gillespie Should Be Dismissed from this Lawsuit**

Plaintiff has also failed to state a claim against Defendant Gillespie. Plaintiff alleges false imprisonment against Defendant Gillespie under Virginia common law.  Plaintiff alleges that he was falsely imprisoned by Defendant Gillespie when Defendant Gillespie came into Plaintiff's room, "unlawfully" restrained and questioned Plaintiff while he was "handcuffed to his bed," and "threatened" Plaintiff with arrest and criminal prosecution." *Plaintiff's Third Amended Complaint*, ¶¶ 25-26, 88-89. Moreover, Plaintiff claims that Defendant Gillespie continued to detain and restrain Plaintiff when he was "no longer delirious" and there was "no legal basis for doing so." *Id*. ¶ 89.

Plaintiff cannot prevail on a claim for false imprisonment. *Lewis*, 281 Va. at 724. The Fourth Circuit has held that, in Virginia, an officer cannot be held liable for false imprisonment "when the officer acted in good faith and with probable cause." *Harrison*, 426 F. Appx at 181. Moreover, "whether probable cause exists in a particular situation…always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense

thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992) (citations omitted).

As previously detailed, Plaintiff was restrained by Mr. Jones and the other guards after he had left his hospital bed in a state of delusion and trespassed into other areas of the hospital. *Plaintiff's Third Amended Complaint*, ¶¶ 15-16, 24. Although Plaintiff alleges that Defendant Gillespie continued to restrain Plaintiff after he was no longer delirious, Plaintiff concedes that he remained in a state of delirium even after he was handcuffed to the bed. *Plaintiff's Third Amended Complaint*, ¶ 26, 89. Defendant Gillespie was, therefore, legally justified in "questioning" and "restraining" Plaintiff to prevent Plaintiff from harming himself or others *at least* until he could be certain that Plaintiff's delirium had passed, *and* that it was safe to remove any restraints on Plaintiff. Consequently, because Defendant Gillespie was legally justified in his actions, Plaintiff has not stated an actionable claim for false imprisonment, and Count V against him should therefore be dismissed.

## CONCLUSION

For the aforementioned reasons, Plaintiff's claims against Defendants Jones and Gillespie fail as a matter of law. The Court should therefore dismiss Defendants from this lawsuit.

Dated: July 2, 2020

**WESLEY GILLESPIE**
**CHRISTOPHER JONES**
By counsel:
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
/s/ Eric P. Burns
Eric P. Burns, VSB #76554
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
(703) 245-9300
(703) 245-9301 (Fax)
eric.burns@wilsonelser.com
*Counsel for Defendants Wesley Gillespie and Christopher Jones*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above will be filed using the Court's

CM/ECF system on July 2, 2020, which will then cause a copy to be electronically served on all

counsel of record.

/s/ Eric P. Burns
Eric P. Burns, VSB #76554
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
8444 Westpark Drive, Suite 510
McLean, Virginia 22102
(703) 245-9300
(703) 245-9301 (Fax)
eric.burns@wilsonelser.com
*Counsel for Defendants Wesley Gillespie and*
*Christopher Jones*