CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/31/2021
JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
     DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| ANTHONY SMITH, | CASE NO. 6:20-cv-00016 |
| *Plaintiff*, |  |
| v. | MEMORANDUM OPINION |
| CENTRA HEALTH, INC., *et al*., |  |
| *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiff, Anthony Smith, was admitted to the emergency room at Lynchburg General Hospital for hernia surgery. After surgery, and while he was still under the effects of morphine administered to him, he left his hospital bed and wandered into other areas of the hospital. He admits he was delirious and disconnected from reality, but says he otherwise presented no harm to anyone. While Plaintiff was still in that state, a Centra Health security guard deployed a taser which struck Plaintiff, causing his wounds to reopen, and necessitating another surgery for his hernia. As a result of his injuries from the incident, Plaintiff could no longer perform his job as a detention officer. He filed this suit against Centra, two of its security guards and unknown John Doe defendants.

Centra and the security guards have filed motions to dismiss. This opinion addresses whether Plaintiff has stated a plausible claim that Centra has a policy or custom of allowing its security guards to use tasers as a means of apprehension, even if the target poses no danger. It also addresses whether Plaintiff plausibly alleged that Centra has been deliberately indifferent in providing deficient training to its security guards on the limits of the use of force, and whether one of the guards used excessive force. The opinion also addresses several state-law claims.

1

In ruling on a motion to dismiss, the Court must assume the truth of all well-pleaded factual allegations in the complaint and draw any reasonable inferences therefrom in the light most favorable to Plaintiff. Many of Defendants' arguments fail because they ask the Court to consider facts beyond the allegations in the complaint, or to construe inferences drawn from those allegations in a light unfavorable to Plaintiff—which is not allowed at this early stage of litigation. Because Plaintiff's allegations state a plausible claim to relief, the Court will deny Defendants' motions to dismiss in substantial part, though the Court will dismiss Plaintiff's Virginia state law gross negligence claim.

<u>Background</u>

1.   *Use of a Taser on Plaintiff at Lynchburg General Hospital*

On February 24, 2018, Plaintiff Anthony Smith was a patient at Lynchburg General Hospital, which is owned and operated by Defendant Centra Health, Inc. ("Centra"). Christopher Jones and Wesley Gillespie were security guards employed by Centra. Dkt. 31 (Third Am. Compl.) ¶¶ 5–8. Plaintiff had an "unblemished 18[-]year record of employment as a supervisor at the Lynchburg Adult Detention Center." <u>Id.</u> ¶ 11.

In February 2018, Plaintiff began to suffer from "extreme abdominal pain due to a severe hernia." <u>Id.</u> ¶ 10. He reported to the Lynchburg General Hospital emergency room several times in the days before February 24, 2018; each time he was sent home without a correct diagnosis or treatment. <u>Id.</u> ¶ 12. His condition steadily worsened. <u>Id.</u>

On February 24, 2018, Plaintiff was admitted to the emergency room and he underwent surgery to repair the hernia. <u>Id.</u> ¶¶ 13–14. During his "post-operative recovery," hospital staff administered morphine and Plaintiff "suffered morphine-induced delirium … and he became disoriented and delusional." <u>Id.</u> ¶ 15. "While in the state of delusion and disorientation from

morphine-induced delirium, [Plaintiff] wandered from his hospital bed and into other areas of the hospital." Id. ¶ 16. Plaintiff acknowledges he was "completely disconnected from reality due to the effect of the morphine." Id. Nonetheless, he alleges that he "did not pose an immediate risk of harm to himself or others at any time." Id. ¶ 17.

Defendant Jones or another as-yet unnamed defendant deployed a Taser—striking Plaintiff and causing him to fall and "incur severe physical and mental injuries. His sutures ruptured, as did his hernia," and as a result, Plaintiff "required treatment and further surgery." Id. ¶¶ 18–19. Plaintiff alleges that, because he did not pose a danger to anyone, the Centra security guards had "other means available to assist [him]" without using a taser. Id. ¶¶ 22–23.

Plaintiff was then "detained and physically restrained." Id. ¶ 24. He was "handcuffed to a bed and only partially conscious," at which point he alleges that Defendant Gillespie came to his room and "threatened and harassed" him, including "threaten[ing] to take [Plaintiff] to jail and have him charged." Id. ¶¶ 24–26. Gillespie detained him even when Plaintiff was no longer delirious and there was no need for restraints. Id. ¶ 89.

Because Plaintiff's injuries rendered him unable to work, he lost his job and substantial retirement benefits as a consequence of Defendants' use of the taser. Id. ¶¶ 19–21. Plaintiff will need further surgery, and he alleges that he has suffered permanent disfigurement. Id. ¶ 20.

2. *Allegations that Defendants Acted Under Color of State Law*

Plaintiff alleges that Jones, Gillespie and certain John Doe defendants were acting within the scope of their employment with Centra, and acting under color of state law, when they injured Plaintiff. Id. ¶¶ 27–28. He also alleges that Defendants were acting under the direction of at least one Special Conservator of the Peace who was appointed upon the petition of Centra by the Lynchburg Circuit Court. Id. ¶ 28.

Plaintiff alleges that, "in addition to employing its own security guards, Centra had an agreement with the Lynchburg Police Department to staff Lynchburg General Hospital with uniformed LPD officers to provide security." Id. ¶ 29. Centra reimbursed the Department for wages paid to the officers, but they were not under Centra's control. Id. Lastly, Plaintiff alleges that LPD officers "are forbidden by agreement between LPD and Centra to allow any conflict between their duties as law enforcement officers and Centra." Id. ¶ 31.

   3.   *Unconstitutional Policy & Custom Allegations*

Plaintiff alleges that Centra "maintained unconstitutional policies and customs with regard to use of force by its security officers that were followed by the other defendants when they injured" him on February 24, 2018. Id. ¶ 32.

Plaintiff alleges that pursuant to a "custom or policy," "on or before February 24, 2018," Centra "armed its security guards with Tasers and other weapons," "permitted its security guards to deploy Tasers against individuals who did not pose an immediate threat of harm to anyone," and "permitted medical staff to authorize the use of Tasers by security guards prospectively against patients." Id. ¶¶ 32–35. As a result, "many patients … were subjected to the unconstitutional use of force by deployment of Tasers at the direction of medical personnel, when the patients did not pose an immediate risk of harm to anyone." Id. ¶ 36 (emphasis added).

According to Plaintiff, Centra "routinely hired inexperienced and unqualified security guards and then ignored [guards'] written pleas for training," and that such pleas were "met with the directive to 'stop sending emails.'" Id. ¶ 37. Plaintiff also alleges that Centra had a policy of "employing maintenance and cleaning personnel to assist security guards in using force against patients," though they also had no such training. Id. ¶ 38. There were also "many occasions before February 24, 2018," in which "untrained and unlicensed maintenance and cleaning

personnel assisted security guards in incidents during which Tasers were unconstitutionally deployed against incapacitated or delirious patients who posed no risk of immediate harm to anyone." Id. ¶ 40 (emphasis added).

Plaintiff further alleges that there were "multiple occasions" on which Centra unlawfully "permitted its security guards to use objectively unreasonable force against patients." Id. ¶ 44. These included:

> (1) On January 16, 2016, Centra armed one of its security guards (Gillespie) with a pistol, which Gillespie used to shoot a psychiatric patient in the back.

> (2) On February 4, 2016, Centra permitted its armed officers to chase down a[n] individual off hospital grounds and to deploy a Taser against that individual when the individual did not pose any risk or threat of harm to anyone.

> (3) On May 18, 2018, Centra security guards deployed a Taser against a young man in the Emergency Room at Lynchburg General Hospital when that young man did not pose a threat of immediate harm to anyone.

Id. ¶ 44.

Plaintiff also writes that Centra "has recently and repeatedly been found by the federal government to have violated patients['] rights by use of unlawful restraint. These violations are matters of public record." Id. ¶ 45.

Lastly, Plaintiff argues that Centra failed to properly train its security guards "in the constitutional limits of their authority," and that the officers' "lack of training in dealing with psychotic or delusional patients and the need for this training, in the context of a hospital setting, is plainly obvious." Id. ¶ 46.

4. *Procedural History*

Plaintiff initially filed this case in the General District Court in Lynchburg. Dkt. 1-1. Plaintiff claimed Defendants violated his due process rights under the Fourth and Fourteenth

Amendments to the U.S. Constitution, and argued they were subject to liability under 42 U.S.C. § 1983. Dkt. 1-1 at 4. Centra filed a notice of removal to this Court. Dkt. 1.

Plaintiff subsequently amended his complaint several times. Plaintiff filed the operative third amended complaint without objection and with leave of the magistrate judge. Dkts. 29, 30. Centra filed a motion to dismiss the third amended complaint and Defendants Gillespie and Jones filed a separate motion to dismiss. Dkts. 33, 35. The motions to dismiss are fully briefed, Dkts. 33–40, and the Court has heard argument.

Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007). Rule 12(b)(6) does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Repub. Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In ruling on a motion to dismiss, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." Massey v. Ojanit, 759 F.3d 343, 347 (4th Cir. 2014). Still, the plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. And the Court need not "accept legal conclusions drawn from the facts," or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).

<u>Reasoning</u>

The third amended complaint includes six counts: (1) a <u>Monell</u> claim against Centra for

unconstitutional policies or customs that harmed Plaintiff; (2) a <u>Monell</u> claim against Centra for

failure to train its security guards; (3) an excessive force claim against Defendants Jones and

John Doe defendants pursuant to § 1983; (4) a Virginia common law assault and battery claim

against Centra, Jones and the John Doe defendants; (5) a Virginia common law false

imprisonment claim against Centra, Jones, Gillespie and the John Doe defendants; and (6) a

Virginia common law claim for gross negligence, and willful, wanton and reckless negligence by

Centra and Jones.

1.     <u>Monell</u> *Claim: Unconstitutional Policies or Customs (Count One)*

In Plaintiff's first count, he sues Centra for maintaining an unconstitutional policy or

custom of "permitting its security guards to use Tasers and other weapons for mere apprehension

or compliance." Dkt. 31 ¶ 52. Plaintiff brings this claim pursuant to <u>Monell v. Department of</u>

<u>Social Services</u>, the Supreme Court decision holding that local government bodies constitute

"persons" within the meaning of § 1983, and can therefore be subject to suit for unconstitutional

policies or customs. 436 U.S. 658 (1978). Plaintiff cites Fourth Circuit authority for the

proposition that "a taser … may only be deployed when a police officer is confronted with an

exigency that creates an immediate safety risk and that is reasonably likely to be cured by using

the taser." <u>Id.</u> ¶ 53 (quoting <u>Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst</u>, 810 F.3d

892, 909 (4th Cir. 2016)). Plaintiff contends that Centra has continued to disregard this precedent

and "to permit its security guards," acting at the behest of Special Conservators of the Peace, "to

deploy Tasers against subjects who either pose no harm at all or who pose only harm to

themselves and who face even greater harm from the use of a Taser." <u>Id.</u> ¶ 54.

A private corporation like Centra is generally not liable under § 1983, but the Fourth Circuit has recognized an exception to that default rule where private security guards have been appointed as Special Conservators of the Peace. Austin v. Paramount Parks, Inc., 195 F.3d 715, 719, 727–28 (4th Cir. 1999). Centra can therefore be held liable "only when an official policy or custom causes the alleged deprivation of federal rights"—claims based on a respondeat superior theory are improper. Id. at 728; see also Monell, 436 U.S. at 692 ("[A] municipality cannot be held liable solely because it employs a tortfeasor.") (emphasis in original).

To establish such a policy or custom, a plaintiff "must point to a persistent and widespread practice" at Centra, "the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014) (cleaned up). A plaintiff must allege "widespread or flagrant" violations of rights to state a Monell claim under this theory—mere "[s]poradic or isolated violations of rights" will not suffice. Id. at 403. Specifically, the constitutional violations must be specific and similar enough that a municipality's indifference to them could be seen as a "deliberate choice." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999). If the existence of an official policy, practice or custom has been satisfactorily alleged, the plaintiff must also show that it was the "moving force of the constitutional violation." Milligan v. City of Newport News, 743 F.2d 227, 230 (4th Cir. 1984) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981)).

Centra raises several arguments for why Plaintiff's policy or custom Monell claim should fail. The Court takes them in turn.

8

A.  *Underlying Constitutional Violation*

Centra first argues that it cannot be liable under a <u>Monell</u> theory because Plaintiff has not stated a plausible underlying constitutional violation. Dkt. 34 at 7. Centra contends that there was "clearly probable cause to detain and restrain Plaintiff: he was disoriented and delusional, completely disconnected from reality, wandering through <u>unauthorized areas</u> of [Lynchburg General Hospital], and <u>posing a danger to himself and patients and staff</u>" at the hospital. <u>Id.</u> at 7 (emphases added). The problem with Centra's argument is that it goes beyond the allegations of the complaint, asserts facts at odds with those in the complaint, and asks the Court to resolve factual inferences in a light favorable to Centra rather than Plaintiff. <u>See</u> <u>Rubenstein</u>, 825 F.3d at 212 (stating that on a motion to dismiss, the court "accept[s] as true all of the factual allegations contained in the complaint and draw[s] all reasonable inferences in favor of the plaintiff").

Centra's argument deviates from the standard of review in at least two key respects. To be sure, the complaint alleges that, while he was under the influence of morphine, Plaintiff "wandered from his hospital bed and into <u>other areas</u> of the hospital." Dkt. 31 ¶ 16 (emphasis added). But the complaint does not allege, nor do the allegations fairly establish, that he was trespassing in "unauthorized" areas. Indeed, a reasonable inference taken in Plaintiff's favor at this stage of the case is that he wandered from his bed and into "other areas of the hospital" where he was allowed to go—not to areas he was barred from entering. Centra also asserts that Plaintiff was "posing a danger to himself and patients and staff" at the hospital. Dkt. 34 at 7. The complaint alleges the opposite. <u>E.g.</u>, Dkt. 31 ¶ 17 ("[Plaintiff] did not pose an immediate risk of harm to himself or others at any time relevant to this complaint."). The Court will not infer at this stage that, because Plaintiff was "disoriented and delusional" and "completely disconnected from reality," he posed a danger to himself and others at the hospital such that use of a taser would be

permissible. One does not plainly follow from the other. Indeed, the Fourth Circuit recently cautioned that "[e]rratic behavior and mental illness do not necessarily create a safety risk," and that "when a seizure is intended solely to prevent a mentally ill individual from harming himself, the officer effecting the seizure has a lessened interest in deploying potentially harmful force." Armstrong, 810 F.3d at 909–10. On summary judgment, Centra may be able to establish its version of events that paints Plaintiff's allegations in a different and more unfavorable light. Dkt. 34 at 2 n.2. However, at this stage of the case, the Court must accept Plaintiff's account.[1]

B. *Alleged Policy or Custom by Centra*

Centra's second argument is that Plaintiff has not plausibly alleged a policy or custom. Id. at 8–14. Centra takes aim at Plaintiff's allegations as "generic and conclusory," id. at 9, and asserts he has "fail[ed] to identify a policy or custom sufficient to support a Monell § 1983 claim," id. at 10. In Centra's view, Plaintiff has "merely identif[ied] a single, isolated incident of alleged unconstitutional activity (his own case)," and argues that he has "fail[ed] to identify any prior similar instances." Id. at 11.

The Court concludes that Plaintiff has stated a plausible Monell policy or custom claim. "Although prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Owens, 767 F.3d at 403. A plaintiff need not "detail the facts underlying his claims, or … plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Jordan by Jordan v. Jackson, 15 F.3d 333, 339 (4th Cir. 1994). Indeed, a plaintiff's "recitation of facts need

---

[1] Defendants' arguments on several other counts of the complaint ask the Court to make these unwarranted inferences as well.

not be particularly detailed, and the chance of success need not be particularly high." <u>Owens</u>, 767 F.3d at 403.

Plaintiff alleges that Centra had a policy or custom before February 24, 2018—when he was injured—that unconstitutionally "permitted its security guards to deploy Tasers against individuals who did not pose an immediate threat of harm to anyone." Dkt. 31 ¶ 34; <u>see also</u> <u>id.</u> ¶ 52 (alleging a custom or policy "permitting [Centra's] security guards to use Tasers and other weapons for mere apprehension or compliance"). This challenged custom or policy is specific. It is far from a plaintiff alleging a mere "abstract" policy of "violating citizens' constitutional rights." <u>See</u> <u>Carter</u>, 164 F.3d at 218. Indeed, the Fourth Circuit has held that a taser "may only be deployed when a police officer is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser." <u>Armstrong</u>, 810 F.3d at 909.

Moreover, the complaint includes various allegations that, if true, would further substantiate the claim. For instance, Plaintiff alleges that before that date, "<u>many patients</u> at Centra facilities were subjected to the unconstitutional use of force by deployment of Tasers at the direction of medical personnel, when the patients did not pose an immediate risk of harm to anyone." Dkt. 31 ¶ 36 (emphasis added). He also alleges that "[<u>o]n many occasions</u> before February 24, 2018, untrained and unlicensed maintenance and cleaning personnel assisted security guards in incidents during which Tasers were unconstitutionally deployed against incapacitated or delirious patients who posed no risk of immediate harm to anyone." <u>Id.</u> ¶ 40 (emphasis added).

While Centra dismisses these allegations as "generic and conclusory," Dkt. 34 at 9, the Fourth Circuit has found similar allegations sufficient to survive a motion to dismiss. In <u>Owens</u>, the plaintiff alleged that there were "[<u>r]eported and unreported cases</u> from the period of time

before and during the events complained of," and that there were numerous "<u>successful motions</u>"

concerning the defendant's alleged custom, policy, or practice of knowingly and repeatedly

suppressing exculpatory evidence in criminal prosecutions. 767 F.3d at 403 (emphases added).

By including these "brief, but non-conclusory, allegations" in the complaint, the Fourth Circuit

held that the plaintiff "had pled sufficient factual content to survive Rule 12(b)(6) dismissal." <u>Id.</u>

at 403–04.

    In this case, Plaintiff also included allegations detailing "multiple occasions" in which

Centra "unconstitutionally permitted its security guards to use objectively unreasonable force

against patients." Dkt. 31 ¶ 44. In another instance involving the use of a taser, Plaintiff alleged

that: "On February 4, 2016, Centra permitted its armed officers to chase down an individual off

hospital grounds and to deploy a Taser against that individual when the individual did not pose

any risk or threat of harm to anyone." <u>Id.</u> This is not "generic and conclusory," as Centra argues.

Dkt. 34 at 12. The complaint alleges the date, facts describing the incident, and that it, like this

case, involved the alleged unlawful use of a taser by a Centra security guard on an individual

who was not a threat. Nor is this incident so remote in time or factually dissimilar that it does not

support Plaintiff's custom or policy claim. <u>See</u> Dkt. 39 at 10–11.

    Plaintiff also alleges that just a month before that incident, one of the defendants here

(Gillespie) allegedly used a pistol to shoot a psychiatric patient in the back. Dkt. 31 ¶ 44. Of

course, this other incident is not precisely analogous to Plaintiff's asserted injury here. For

instance, it did not involve the use of a taser. However, it did still involve an alleged use of

unreasonable force by a Centra security guard against a psychiatric patient. That incident

possesses certain factual similarities to Plaintiff's case, since he asserts that a Centra security

guard deployed a taser at him when he was delirious and in a mental state disconnected from

reality, though not endangering anyone. Thus, if true, this prior incident would further substantiate Plaintiff's claim that Centra maintained an unconstitutional policy or custom "of permitting its security guards to use Tasers and other weapons for mere apprehension or compliance." Id. ¶ 52.[2]

Centra similarly argues that causation and deliberate indifference elements of the Monell claim are lacking because Plaintiff has not alleged any prior similar incidents of unreasonable use of force. See Dkt. 34 at 16–17. Again, Plaintiff has alleged more than just his own case to support an alleged pattern of unconstitutional behavior, and his allegations of prior constitutional violations are materially similar to those the Fourth Circuit found sufficient in Owens.

The Court therefore concludes that Plaintiff has plausibly alleged that a policy or custom of Centra was the "moving force" behind Plaintiff's injuries, see Milligan, 743 F.2d at 230–31, and that Centra failed to correct it on account of their "deliberate indifference," see Owens, 767 F.3d at 402. Moreover, to the extent Centra contends that it "adheres to strict policies regarding the training and qualification of its security officers and their authorization to carry and use tasers on Centra premises," Dkt. 34 at 17, that argument is not fairly drawn from the allegations in the complaint and is more suitable to resolution on summary judgment.

To be sure, Plaintiff "cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that [Centra] was indifferent to the risk of [his] specific injury or that it was the moving force behind [his] deprivation." See Carter, 164 F.3d at 218. Ultimately, Plaintiff will have to "do more than allege a pervasive practice" of Centra's misconduct, "he must prove it." See Owens, 767 F.3d at 404 (emphasis in original). But here, Plaintiff has pleaded enough to

---

[2] The Court need not consider Plaintiff's third example of unreasonable force by Centra security guards in support of this conclusion, which occurred after Plaintiff's injury.

support his <u>Monell</u> custom or policy claim to survive Centra's motion to dismiss. The Court will deny the motion to dismiss count one of the third amended complaint.

 2. <u>Monell</u> *Claim: Failure to Train (Count Two)*

Plaintiff asserts under <u>Monell</u> and § 1983 that Centra was deliberately indifferent in its failure to train its security guards "in the constitutional limits of their authority." Dkt. 31 at 10. Plaintiff asserts that in Centra's training for security guards, it "did not describe or delineate the constitutional limits of the use of force," and its taser training "did not address the constitutional limits of the use of Tasers." <u>Id.</u> ¶¶ 60–61. Plaintiff further alleges that before the date of his injury, Centra "trained its security guards with an online course in Basic Security Officer training provided by the International Association for Healthcare Security and Safety that did not describe or delineate the constitutional limits on the use of force." <u>Id.</u> ¶ 60. Moreover, Plaintiff alleged that before the date of his injury, Centra "provided woefully deficient in-house Taser training and certification to its newly hired guards," which also failed to "address the constitutional limits of the use of Tasers." <u>Id.</u> ¶ 61. Plaintiff asserts that security guards would only get a "few minutes" of training and were "subjected to a single Taser deployment on their toes," and then they "returned to duty." <u>Id.</u>

 "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011). A municipality may be liable when its failure to properly train police "amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 388 (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his

action." Connick, 563 U.S. at 61 (internal quotation and grammatical marks omitted). Moreover, "[a] municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id.

Training deficiencies can include (1) "express authorizations of unconstitutional conduct," (2) "tacit authorizations" of unconstitutional conduct, and (3) failures to adequately "prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987). No matter which theory is alleged, the plaintiff must point to "a specific deficiency" in training, "rather than general laxness or ineffectiveness in training." Id.

To plead that a training deficiency caused constitutional violations, a plaintiff must allege either than an inadequately trained employee engaged in a pattern of unconstitutional conduct or that a constitutional violation is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Bd. of Cnty. Commr's of Bryan Cnty. v. Brown, 520 U.S. 397, 409 (1997) (citation omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 563 U.S. at 62 (quoting Bryan Cnty., 520 U.S. at 409). For example, because "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," "the need to train officers in the constitutional limitations on the use of deadly force … can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights. City of Canton, 489 U.S. at 390 n.10.

The Court concludes that Plaintiff has sufficiently alleged a specific deficiency in Centra's training. Plaintiff described the type of training Centra provides for basic security and

"in-house Taser training," but stated that it "does not describe or delineate the constitutional limits of the use of force." Dkt. 31 ¶ 60; see also id. ¶ 61, ¶ 62 (alleging Centra security guards "were never trained in the constitutional limits of the use of force"). The allegations point out a "specific deficiency" in training rather than "general laxness or ineffectiveness in training." See Spell, 824 F.2d at 1390; see also Sulton v. Baltimore Cnty., Maryland, No. 18-cv-2864, 2021 WL 948820, at *6 (D. Md. Mar. 12, 2021) (denying motion to dismiss Monell failure-to-train claim, and finding sufficient plaintiffs' allegations about the "the type of training that should have been required and was afforded to some, but not all," officers, including "crisis intervention training").

In its motion to dismiss, Centra had argued that Plaintiff failed to allege a plausible failure-to-train claim. Dkt. 34 at 15. However, in its reply brief, Centra expanded significantly on the argument and, for the first time, attached and sought to have the Court consider the taser policy Centra asserts was in effect on the date of Plaintiff's injury. Dkt. 39 at 13–14, 18–20; see also Dkt. 39-1. Centra quotes extensively from the policy, including statements that use of tasers "should be limited to situations where there is an immediate threat to the safety of the Officer(s) or others." E.g., Dkt. 39 at 14. In its reply, Centra argues that the Court can consider the policy as a document incorporated into the complaint by reference, and further, that the Court should disregard allegations that conflict with the text of the policy. Id. at 13–14 & nn. 2–3. In addition, Centra also attached to its reply brief a taser training manual and certifications, which Centra contends "directly refute Plaintiff's allegations that Centra's taser training course 'did not describe or delineate the constitutional limits on the use of force ….'" Dkt. 39 at 20 (quoting Dkt. 33 ¶ 60).

On these motions to dismiss, the Court declines to consider Centra's documents attached to its reply brief. By introducing its policies, manuals and certifications of security guards in its reply, Centra opened a new line of argument that was substantially different from Centra's argument in its motion to dismiss which focused on the allegations in the complaint. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006). The Court sees no reason why Centra could not have made these arguments and sought to introduce such documents into its motion to dismiss, had it chosen to raise that type of challenge in the first instance. Moreover, it would require a very expansive interpretation of the incorporation-by-reference doctrine—and one not clearly warranted from Plaintiff's allegations—for this Court to consider that Plaintiff's complaint incorporated all or many of these documents by reference. At a later stage of litigation, Centra may again rely on these documents to support its evidentiary case, or to demonstrate that there is no genuine issue of material fact and that it is entitled to judgment on the failure-to-train claim.

Centra also argues that Plaintiff's failure-to-train claim should be dismissed because it was based upon a single incident (his own) which "is insufficient for Monell § 1983 liability." Dkt. 39 at 15; id. at 19. But the Court has rejected that argument for purposes of Plaintiff's Monell policy or custom claim, and similarly finds that Plaintiff's allegations of prior incidents of unreasonable use of force suffice for purposes of the failure-to-train claim. See, e.g., Dkt. 31 ¶ 36 (alleging, "[b]efore February 24, 2018, many patients at Centra facilities were subjected to the unconstitutional use of force by deployment of Tasers at the direction of medical personnel, when the patients did not pose an immediate risk of harm to anyone"); id. ¶ 44 (alleging an incident where Centra permitted its armed officers "to chase down an individual off hospital

grounds and to deploy a Taser against that individual" who posed no threat to anyone). At this stage of litigation, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Owens, 767 F.3d at 403. And assuming the truth of Plaintiff's allegations, they support reasonable inferences that Centra's security guards repeatedly deprived patients of their constitutional rights, and that Centra was on notice that its existing use-of-force training programs failed to "prevent constitutional violations." Bryan Cnty., 520 U.S. at 407. Accordingly, the Court will deny Centra's motion to dismiss Plaintiff's failure-to-train claim in count two of the third amended complaint.[3]

3.    *Excessive Force Claim (Count Three)*

Plaintiff further claims, pursuant to § 1983, that Defendants Christopher Paul Jones and the John Doe defendants applied unreasonable and excessive force, in violation of the Fourth and Fourteenth Amendments. Dkt. 31 ¶¶ 71–76.

Plaintiff alleges that Jones and the John Doe defendants, acting in concert with the Lynchburg Police Department and Centra's Special Conservators of the Peace, applied objectively unreasonable and excessive force while unlawfully detaining and arresting Plaintiff on February 24, 2018. Id. ¶ 73. Plaintiff alleges that he had not committed any crime nor was he suspected of doing so, and that he did not pose a danger to himself or others. Id. Plaintiff alleges that "Jones and some or all of [the John Doe defendants] unlawfully assaulted, battered and

---

[3] One more issue related to Plaintiff's Monell claims warrants attention. Centra seeks attorneys' fees and costs incurred in this action pursuant to 42 U.S.C. § 1988(b) and (c), on the basis that Plaintiff's Monell claims are "frivolous, unreasonable and without foundation." Dkt. 34 at 19. Because the Court has concluded that Plaintiff's Monell claims survive Centra's motion to dismiss, the Court will deny Centra's request for fees, without prejudice to Centra's ability to later raise such request, including if it is ultimately substantiated that Plaintiff included allegations in the complaint that were knowingly false, as Centra contends, Dkt. 39 at 13.

falsely imprisoned plaintiff [ ] while he was delusional and disoriented," and that "[o]ne of the defendants deployed a Taser against the plaintiff, causing [him] to fall to the floor and incur severe physical and mental injuries." Id. ¶ 18.

Defendant Jones argues this count should be dismissed for three reasons. First, Jones contends that he did not violate the Fourth Amendment and unlawfully seize Plaintiff because he had probable cause to arrest Plaintiff. Dkt. 36 at 7–9. Jones argues that there was probable cause to seize Plaintiff because he "was trespassing through unauthorized areas of the hospital" in a delusional state, and that "[i]t is reasonably inferred that in this state, he was causing sufficient problems to require that hospital security was called." Id. at 8; see also id. (claiming that Jones "reasonably suspected" Plaintiff "was a danger to himself and others"). Second, Jones contends that he did not use excessive force. He argues that there are insufficient allegations that Jones, as opposed to someone else, deployed the taser, and in any event, "[a]ny reasonable person in [Jones'] position, with the duty to protect the hospital and all of its patients, including Plaintiff, would fairly conclude that Plaintiff needed to be seized." Id. at 9–10. Lastly, Jones argues that he is entitled to qualified immunity. Id. at 12–15. The Court takes Jones' arguments in that order.

An arrest based on probable cause does not violate the Fourth Amendment. Mensh v. Dyer, 956 F.2d 36, 39 (4th Cir. 1991). Probable cause "to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1987). "It is clearly established that citizens have a Fourth Amendment right to be free from unreasonable seizures accomplished by excessive force." Valladares v. Cordero, 552 F.3d 384, 388 (4th Cir. 2009). In addressing a claim of excessive force under the Fourth Amendment,

the Court applies a standard of "objective reasonableness," Graham v. Connor, 490 U.S. 386,

395 (1985), by which the Court must determine "whether a reasonable officer in the same

circumstances would have concluded that a threat existed justifying the particular use of force,"

Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996) (citing Graham, 490 U.S. at 396–97).

Jones' first argument fails because the allegations in the complaint do not establish

probable cause to seize Plaintiff. Plaintiff alleged he left his hospital bed in a "disoriented and

delusional" state, and "wandered into other areas of the hospital." Dkt. 31 ¶¶ 15–16. While he

alleged that he was no danger to anyone, id. ¶ 17, "Jones and some or all of" the John Doe

defendants "assaulted, battered and falsely imprisoned" Plaintiff, and one of which deployed a

taser at Plaintiff, causing him to fall and suffer injuries, id. ¶ 18. Such allegations, standing on

their own and accepted as true, state a plausible claim to relief against Jones and others. See

Armstrong, 810 F.3d at 910 ("Where, during the course of seizing an out-numbered mentally ill

individual who is only a danger to himself, police officers choose to deploy a taser in the face of

stationary and non-violent resistance to being handcuffed, those officers use unreasonable

force.").

Jones argues that Plaintiff conceded that he "was trespassing through unauthorized areas

of the hospital," Dkt. 36 at 8, but that is not so. Rather, Plaintiff merely alleged that he left his

hospital room and went into "other areas of the hospital," Dkt. 31 ¶ 16. Again, it would be an

unwarranted inference construed against Plaintiff for the Court to conclude that Plaintiff was

trespassing. Similarly, while Plaintiff alleged that he was in a state of "delirium" and was

"completely disconnected from reality due to the effect of the morphine," id., those allegations

do not, without more, give rise to a reasonable inference that Jones could have reasonably

considered Plaintiff "a danger to himself and others in the hospital," or that "he was causing

sufficient problems to require that hospital security was called." Dkt. 36 at 8. See Armstrong, 810 F.3d at 909 ("Erratic behavior and mental illness do not necessarily create a safety risk either.").

For similar reasons, Jones' arguments that he did not use excessive force because the use of the taser "was objectively reasonable under the circumstances," Dkt. 36 at 9, fare no better. "To properly consider the reasonableness of the force employed, [the court] must view it in full context, with an eye toward the proportionality in light of all of the circumstances." Armstrong, 810 F.3d at 899. This is not a case "[w]hen the facts are undisputed," as Jones writes in his motion to dismiss. Dkt. 36 at 11. That is because Jones relies not just on the allegations in the complaint but on inferences not fairly drawn from the complaint: e.g., that Plaintiff "was trespassing into other areas of the hospital without authorization," and that "[t]here can be little doubt that Plaintiff posed a serious threat to other hospital patients and medical staff." Id. Whether the facts ultimately bear out Plaintiff's or Jones' version of events remains to be seen on a more developed record. But at this stage of the case, the Court cannot accept facts contrary to those pleaded in the complaint or construe allegations in a manner unfavorable to the Plaintiff.

Alternatively, Jones argues that he is entitled to qualified immunity. Dkt. 36 at 12–15.[4] Qualified immunity "shield[s] [officials] from civil damages liability as long as their actions

---

[4] The Court assumes for purposes of this opinion that Jones is entitled to raise a qualified immunity defense. Jones asserts that, although he is a private individual rather than a government actor, he effectively was an individual in the private sector who took upon a government function of providing security. Dkt. 36 at 12–14. Plaintiff did not directly challenge that premise. Dkt. 37.

When a court is confronted with an argument that "a private party acting under color of state law is entitled to qualified immunity, the Supreme Court has instructed courts to 'look both to history and to the purposes that underlie government employee immunity.'" Gregg v. Hamm, 678 F.3d 333, 340 (4th Cir. 2012) (quoting Richardson v. McKnight, 521 U.S. 399, 404 (1997)). But if there is no "firmly rooted tradition of immunity" and policy considerations also do not support extending immunity to the category of private persons like Jones, he is not entitled to

could reasonably have been thought consistent with the rights they are alleged to have violated."

Anderson v. Creighton, 483 U.S. 635, 638 (1987). To determine whether a complaint should

survive a motion to dismiss on grounds of qualified immunity, the Court proceeds to consider the

familiar "two-step" inquiry, analyzing (1) "whether a constitutional violation occurred," and (2)

"whether the right violated was clearly established." Tobey v. Jones, 706 F.3d 379, 385 (4th Cir.

2013) (citing Pearson v. Callahan, 555 U.S. 223 (2009)). The Court may address these steps in

either order.

At step one of this analysis, Plaintiff has pleaded a plausible claim of a constitutional

violation. Plaintiff alleged that when he left his hospital bed in a "disoriented and delusional"

state and he "wandered … into other areas of the hospital," Jones and the John Doe defendants

assaulted him, including by deploying a taser at Plaintiff. Dkt. 31 ¶¶ 15–18. At all times, Plaintiff

alleged that he presented no immediate risk of harm to himself or anyone else. Id. ¶ 17. The

Fourth Circuit has held that a taser "may only be deployed when a police officer is confronted

with an exigency that creates an immediate safety risk and that is reasonably likely to be cured

by using the taser." Armstrong, 810 F.3d at 909. The court further held in Armstrong that, when

a mentally-ill individual poses only a danger to himself, and "in the face of stationary and non-

violent resistance to being handcuffed," police officers who choose to deploy a taser "use

unreasonably excessive force." Id. at 910. Indeed, even those few aggravating facts in that case

are not alleged here. There is no allegation Plaintiff posed a danger to himself, or he resisted

being handcuffed.

---

qualified immunity. Gregg, 678 F.3d at 340. At this time, the Court will assume that Jones is
entitled to raise a qualified immunity defense. See Drewitt v. Pratt, 999 F.2d 774 (4th Cir. 1993)
(holding on summary judgment that an off-duty police officer working as a part-time security
guard at Pizza Hut was entitled to qualified immunity).

At the second step, the Court asks whether the right violated was clearly established. On the allegations in Plaintiff's complaint, the right was clearly established. While in Armstrong, the Fourth Circuit held that "qualified immunity shields the officers … from liability," the court went further to hold that "law enforcement officers should now be on notice that such taser use violates the Fourth Amendment." Id. at 910. Plaintiff alleges in this case that Defendants struck him with a taser under these circumstances over two years after the Fourth Circuit issued its published decision in Armstrong.

To be sure, the facts of Armstrong were unique, though the case also involved the use of a taser on an individual in "an unpredictable and erratic state." See 810 F.3d at 910 (Wilkinson, J., concurring in part). And the Fourth Circuit has later explained that "neither Armstrong nor [Yates v. Terry, 817 F.3d 877 (4th Cir. 2016)], established a rule for taser usage that is applicable to every situation." Cansler v. Hanks, 777 F. App'x 627, 637 (4th Cir. 2019).

Moreover, a defendant is entitled to raise a qualified immunity defense at the motion to dismiss stage of litigation, and later on a motion for summary judgment. Tobey, 706 F.3d at 393–94; Behrens v. Pelletier, 516 U.S. 299 (1996). Indeed, "[o]rdinarily, the question of qualified immunity should be decided at the summary judgment stage." Willingham v. Crooke, 412 F.3d 553, 558 (4th Cir. 2005). Accordingly, while the Court reviews this issue based upon the allegations in the complaint now, "[i]t may be that discovery will reveal there is no genuine issue of material fact"—if so, Jones "can move for summary judgment" on qualified immunity grounds. See Tobey, 706 F.3d at 393.

Indeed, in Tobey, the Fourth Circuit affirmed the denial of qualified immunity on a motion to dismiss. The court concluded that "[t]he question whether Mr. Tobey's conduct was so 'bizarre' and 'disruptive' that Appellant's reaction was reasonable" in "jump[ing] straight to

arrest" him, was a question that "cannot be decided at the 12(b)(6) stage." Id. Similarly here, the ultimate question whether Plaintiff's actions would lead a reasonable officer to conclude that he was an imminent threat to others, and thus that deploying a taser was warranted, requires a more developed record and not merely the allegations in the complaint. But those allegations survive Jones' motion to dismiss.

Accordingly, the Court will deny Jones' motion to dismiss count three of the third amended complaint.

4. *Assault and Battery (Count Four)*

Plaintiff also sues Centra, Jones and the John Doe defendants for common law assault and battery under Virginia law. Dkt. 31 ¶¶ 77–84. Plaintiff alleges that Jones and the John Doe defendants placed him in reasonable apprehension of imminent physical harm when they threatened to use force against him; and intentionally and without consent committed a battery upon him when they struck him with a taser. Id. ¶¶ 78–79. Plaintiff also alleges that Centra is vicariously liable for Jones' and the John Doe defendants' actions because "they were acting within the scope of their employment by Centra" when they committed those torts. Id. ¶ 82.

In Virginia, a battery is "an unwanted touching which is neither consented to, excused, nor justified," and an assault is "an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in the other person's mind a reasonable apprehension of an imminent battery." Koffman v. Garnett, 574 S.E.2d 258, 261 (Va. 2003). "A legal justification for the act being complained of will defeat an assault and battery claim," and in Virginia one such justification is that "police officers are legally justified in using reasonable force to execute their lawful duties." Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009) (citation omitted).

Jones argues that Plaintiff's assault and battery claims against him should be dismissed because his actions "were legally justified." The reasons he gives are the same as those he gave to avoid liability on Plaintiff's excessive force claim. Dkt. 36 at 16; Dkt. 40 at 3–6. Centra raises similar arguments relying on unwarranted inferences from the complaint, namely, that "[t]here was clearly probable cause to detain and restrain Plaintiff," that he was "wandering through unauthorized areas of" the hospital, and that he "pos[ed] a danger to himself and patients and staff." Dkt. 34 at 20 (emphasis added); Dkt. 39 at 23–24 ("The Centra security officer deployed his taser to prevent Plaintiff from further endangering himself and patients and staff at [Lynchburg General Hospital].").

As above, the Court similarly concludes that Plaintiff has stated a claim of assault and battery against Jones and the John Doe defendants, that the inferences Defendants try to make are unsupported by the complaint, and that the allegations in the complaint do not establish a legal justification as would defeat the assault and battery claims. Under Virginia law, an employer is liable for an employee's tortious conduct through respondeat superior "where the activity that gave rise to the tortious act was within the scope of the employment." Meade v. Johnson Mem'l Hosp., No. 1:10-cv-24, 2010 WL 3463639, at *3 (W.D. Va. Sept. 2, 2010) (citing Comm'l Bus. Sys., Inc. v. Bellsouth Servs., Inc., 453 S.E.2d 261, 265 (Va. 1995)). Because the Court cannot determine on these allegations that Defendants' use of force against Plaintiff was reasonable, the Court cannot dismiss Plaintiff's respondeat superior claim against Centra at this time either. Accordingly, the Court will deny the motions to dismiss count four of the third amended complaint.

5.     *False Imprisonment (Count Five)*

Plaintiff also raises a claim of false imprisonment under Virginia common law against Centra, Jones, Gillespie, and the John Doe defendants. Dkt. 31 ¶¶ 85–90. Plaintiff alleges that, "[a]fter being assaulted and battered by" Jones and the John Doe defendants, he "was detained and physically restrained." Id. ¶ 24. At that point, Gillespie, another security guard at Centra, "came to his room and threatened and harassed [him], thereby causing [him] severe emotional distress." Id. ¶ 25. While Plaintiff was "suffering from the lingering morphine-induced delirium," "writhing in pain," and "handcuffed to a bed and only partially conscious," Gillespie "threatened to take [him] to jail and have him charged." Id. ¶ 26. Plaintiff further alleges that Gillespie continued to restrain him when he "was no longer delirious and when there was no legal basis for restraint." Id. ¶ 89. According to Plaintiff, there was no legal justification to detain and restrain him, or to threaten him with arrest or prosecution. Id. ¶¶ 87–89.

In Virginia, false imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." Jordan v. Shands, 500 S.E.2d 215, 218 (Va. 1998). "If the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." Lewis v. Kei, 708 S.E.2d 884, 890 (Va. 2011). Plaintiff's allegations supporting his false imprisonment claim predominantly involve Gillespie. Dkt. 31 ¶¶ 85–90; see id. ¶¶ 24–26. Plaintiff concedes that, at first, he was "suffering from lingering morphine-induced delirium" while he was "handcuffed to the bed" and questioned by Gillespie. Id. ¶ 26. However, Plaintiff further alleges that Gillespie "continued to restrain [him] when [he] was no longer delirious." Id. ¶ 89. The necessity of restraints, and the duration of any such restraint, may ultimately be shown to be justified based on medical concern for Plaintiff's physical or mental state. Cf. Robertson v. Prince William Hosp., No. 1:11-cv-820, 2012 WL 1448101, at *6 (E.D. Va. 25, 2012), aff'd, 486

26

F. App'x 375 (4th Cir. 2012) (awarding summary judgment to Prince William Hospital on claim of unlawful detention and excessive force, following submission of evidence that "a physician authorized the use of restraints to protect Ms. Robertson from herself pursuant to an Emergency Custody Order").

But again, it would require the Court to construe factual allegations in the complaint against Plaintiff for the Court to hold Gillespie's continued detention of Plaintiff was justified, even after he "was no longer delirious." Centra and Jones raise similar arguments as before that would require the Court to construe other factual allegations in their favor rather than Plaintiff's. Moreover, Plaintiff's specific allegations concerning his case are further substantiated by his allegation that "Centra has recently and repeatedly been found by the federal government to have violated patients['] rights by use of unlawful restraint," which "are matters of public record." Dkt. 31 ¶ 45; see also Owens, 767 F.3d at 403. Plaintiff has stated a plausible claim of false imprisonment. Accordingly, the Court will deny Defendants' motion to dismiss count five of the third amended complaint.

6.   *Gross and Willful, Wanton and Reckless Negligence (Count Six)*

In his final claim, Plaintiff alleges that Centra, Jones, and the John Doe defendants committed "gross and willful, wanton and reckless negligence" under Virginia law. Dkt. 31 at 15; id. ¶¶ 91–107. Plaintiff alleges that "it is entirely foreseeable that post-surgical patients may become delirious and leave their beds," and that "Centra had a duty to protect delirious patients … by preventing them from leaving their beds and wandering elsewhere," as well as "a duty to use safe means to restrain and protect delirious patients," without deploying a taser. Id. ¶¶ 93–96.

In Virginia, gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other

person." Elliott v. Carter, 791 S.E.2d 730, 732 (Va. 2016). It "requires a degree of negligence

that would shock fair-minded persons, although demonstrating something less than willful

recklessness." Id. Because the standard for gross negligence is "one of indifference, not

inadequacy," "a claim of gross negligence must fail as a matter of law when the evidence shows

that the defendants exercised some degree of care." Id. (emphasis added).

    "Willful or wanton negligence involves a greater degree of negligence than gross

negligence," in that an essential ingredient of the act or omission is an "actual or constructive

consciousness of the danger involved." Boward v. Leftwich, 89 S.E.2d 32, 35 (Va. 1955).

Ordinarily, whether gross negligence has been established is a matter to be decided by the

factfinder, though when reasonable minds could not differ upon the conclusion that such

negligence has not been shown, the Court should rule on the issue. Frazier v. City of Norfolk,

362 S.E.2d 688, 691 (Va. 1987).[5]

    Plaintiff's gross negligence claim fails because the allegations in the complaint establish

that "defendants exercised some degree of care," Elliott, 791 S.E.2d at 732, just not to the extent

Plaintiff would have wished. Significantly, for example, Plaintiff acknowledges that "Lynchburg

General Hospital employs bed alarms in its surgical recovery rooms precisely because of this

risk" that "post-surgical patients may become delirious and leave their beds." Dkt. 31 ¶ 93.

Plaintiff also argues that "[s]afe means and techniques exist to handle delirious patients" like

him, including "distraction, de-escalation and the deployment of less injurious weapons (pepper

---

[5] To the extent Plaintiff also asserts a claim of "reckless negligence" as well as "willful
and wanton negligence," they are one and the same. See Lindsey v. Jewett, No. 3:19-cv-634,
2020 WL 4036198, at *7 (E.D. Va. July 17, 2020) (citing Infant C. v. Boy Scouts of Am., Inc.,
391 S.E.2d 322, 328 (Va. 1990)); Griffin v. Shiveley, 315 S.E.2d 210, 212 (Va. 1984)
(explaining that Virginia law "recognizes three degrees of negligence, (1) ordinary or simple, (2)
gross, and (3) willful, wanton, and reckless.").

spray or properly used batons)." Id. ¶ 97. Yet the complaint also alleges that Centra employs its own security guards, and reimbursed Lynchburg Police Department officers to provide security, id. ¶ 29, and that Centra provided training to its security guards, id. ¶¶ 60–61. Plaintiff has challenged the inadequacy of the training and the security guards, but again, these allegations show Centra and Defendants exercised some degree of care. Moreover, because gross negligence requires a lesser showing than willful, wanton, and reckless negligence, the Court's conclusion that Plaintiff failed to state a claim for gross negligence similarly dooms these other claims of negligence. Accordingly, the Court will grant Defendants' motions to dismiss count six of the third amended complaint.

Conclusion

For these reasons, the Court will deny Centra's and Jones' and Gillespie's motions to dismiss, except as to count six for gross negligence, which shall be dismissed.

The Clerk of Court is directed to send this memorandum opinion to all counsel of record.

ENTERED this  31st   day of March 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE